**GARNER v. LEMAR et al.**

**No. 2501.**

Court of Civil Appeals of Texas. El Paso.
March 19, 1931.

Rehearing Denied April 16, 1931.

J. A. Thomas, Louis D. Gayer, and Lloyd Kerr, all of San Angelo, and B. F. Howell, of Rankin, for appellant.

W. B. Silliman, of Ft. Stockton, Walace Hawkins, W. H. Francis, and A. S. Hardwicke, all of Dallas, and R. E. Seagler and R. G. Baker, both of Houston, for appellees.

PELPHREY, C. J.

G. S. White et al., the then owners of the soil, on November 30, 1925, executed a ten-year mineral lease on the west half of section 112, block 11, H. & G. N. Railway Company lands in Pecos county, Tex., to John Sealy and others, as trustees for the Magnolia Petroleum Company, with undivided delay rental at 25 cents per acre and a one-eighth oil and gas royalty reserved.

On October 9, 1925, White et al. leased to F. J. Ellyson for ten years the north half of section 122, block 11. This lease provided that 10 cents per acre of the delay rental should be paid to the land commissioner and 15 cents per acre to the landowners, and reserved a one-sixteenth royalty each to the state and owner of the soil.

A like lease was executed on the same date by the same parties on the south half of said section. John Sealy and the other trustees, on April 19, 1926, conveyed the lease on section 112 to the Magnolia Petroleum Company, a corporation. Ellyson, on November 21, 1925, assigned his lease on the south half of section 122 to the Pure Oil Company, and on January 4, 1926, assigned his lease on the north half of said section to the Gulf Production Company.

On October 6, 1926, G. S. White et al. conveyed the above lands, together with others, to the White Land & Cattle Company.

The following January the White Land & Cattle Company executed a mineral deed conveying the mineral estate in said land to H. E. Lemar, and assigned to him the unaccrued rentals and royalties.

Later Lemar conveyed by mineral deeds a one-fourth mineral interest and royalty in sections 112 and 122 to Humble Oil & Refining Company, a one-half mineral interest and royalty and all delay rental on the west half of section 112 to Magnolia Petroleum Company, a one-eighth mineral interest and royalty and one-eighth delay rental in section 122 to A. C. Butler, and a one-eighth mineral interest and royalty in section 122 to Gar-Tex Oil Company.

On January 19, 1929, the White Land & Cattle Company conveyed the above sections to F. R. Carter, who, on the 2d day of April, following, conveyed the land to appellant, J. W. Garner.

The deeds from the White Land & Cattle Company to Carter and from Carter to appellant both provided that they did not include the mineral rights on the land; it being understood that they had been theretofore conveyed.

Appellant filed this suit in the district court of Pecos county against Lemar, Butler, Humble Oil & Refining Company, Magnolia Petroleum Company, and Gar-Tex Oil Company.

He alleged that he was the "owner of the soil" within the meaning of articles 5367 and 5382, Revised Statutes of 1925; that on December 9, 1911, and January 30, 1907, respectively, the lands in question were a part of the public free school lands of the state of Texas and had been classified as mineral and grazing lands; that thereafter they were sold with a reservation of the minerals to the state of Texas; that appellees had caused to be recorded in the deed and lease records of Pecos county certain pretended conveyances, transfers, and assignments to them of all the oil, gas, and mineral rights appurtenant to said lands, including the pretended right to collect all lease moneys, bonuses, rentals, and royalties; that, acting under said conveyances, they have collected all the rentals accruing thereunder; that they are still claiming various interests in the mineral rights on the lands and claim the right to continue collecting the rentals on said lands and to appropriate the same to their own use and benefit; that at the times of such pretended conveyances, appellees were not the "owners of the soil"; that, by reason thereof, such conveyances are null and void; that a cloud is cast upon the title of appellant by the pretended claims of appellees, thereby depriving him of his rights in connection with the ownership of the lands, and that he has no adequate legal remedy, because the amount of his damages could not be accurately determined; that appellees never paid to the owners of the soil more than $24,560 for the twenty-four sections, and that he was ready, able, and willing to pay to appellees the sum of $918 as full compensation which they had paid the owners of the soil for the minerals in the lands in question.

He prayed for judgment quieting his title, together with all the rights and privileges to which he is in any way entitled in connection therewith, and for the removal of all clouds cast thereon.

Appellees answered by general demurrers, general denial, and pleas of not guilty, and alleging that the oil and gas leases executed by G. S. White et al. to Magnolia Petroleum Company and to Ellyson are in full force and effect, that all covenants and conditions therein, including the payment of rentals and royalties to the state, have been complied with, and that appellant purchased the surface estate subsequent to and with full knowledge of the mineral deeds, and that the surface estate was impressed by express reservation with their rights, titles, and interests. The case was submitted to the court without the intervention of a jury and upon hearing, the court rendered judgment that appellant take nothing.

From that judgment this appeal has been prosecuted.

### Opinion.

Appellant, in his brief, presents seven propositions of law upon which he depends for a reversal of the judgment; but, as we view the record, the rights of the parties can be determined by ascertaining the correct answer to the following questions: (1) Are the rights secured to the surface owner of land by the "Relinquishment Act" (Rev. St. 1925, arts. 5367–5382) the subject of assignment? (2) Do his rights to rentals and royalties terminate upon a sale by him of the surface estate? and (3), Is a subsequent owner of the surface estate entitled to the rentals and royalties which accrue subsequent to his acquisition of the surface estate?

We are of the opinion that these questions should be answered in the affirmative.

Article 5367, Revised Statutes, reads: "The State hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds."

Article 5368 reads: "The owner of said land is hereby authorized to sell or lease to

any person, firm or corporation the oil and gas that may be thereon or therein upon such terms and conditions as such owner may deem best, subject only to the provisions hereof, and he may have a second lien thereon to secure the payment of any sum due him. All leases and sales so made shall be assignable. No oil or gas rights shall be sold or leased hereunder for less than ten cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the State ten cents per acre per year of sales and rentals; and in case of production shall pay the State the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil."

Article 5379 reads: "The payment of the ten cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be in lieu of all damages to the soil."

After the enactment of the "Relinquishment Act," O. W. Greene applied to the commissioner of the general land office for a permit to prospect for oil and gas on certain lands which had been theretofore awarded and sold to T. F. Hickox and by him transferred to I. G. Yates. In the sale to Hickox the land had been classified as "mineral," and the minerals had been reserved to the state. The land commissioner rejected the application, and an original proceeding for mandamus was brought in the Supreme Court to compel the land commissioner to issue the permit. Greene contended as a basis for the relief sought that the Relinquishment Act was unconstitutional, and therefore he was entitled to the permit under the provisions of permit and lease law of 1917 (Acts 35th Leg. c. 83).

The reasons assigned by Greene in attacking the constitutionality were (1) that the act constituted a donation to the owner of the surface of a part of the permanent free school fund; (2) that it attempted to create an irrevocable agency coupled with an interest in the subject-matter; (3) that it provided for the use of a part of the permanent school fund to compensate the owner of the soil for services rendered by him, and for damages to his surface rights; and because it created "an agency with power to fix the conditions, times, and terms of sale of public school and asylum lands," in contravention of section 4, art. 7, of the Constitution. The Supreme Court, Greene v. Robison, 117 Tex. 516, 8 S.W.(2d) 655, 659, in arriving at the intention of the Legislature in passing the Relinquishment Act, had the following to say regarding the conditions existing under the statutes then in force:

"There was a dual or double ownership of the land, the surface estate and the mineral estate, each antagonistic to and conflicting with the other. There was no provision of law for the protection of the owner of the soil in his peaceable enjoyment and possession of his property. The development of an oil field on it would be disastrous to him and utterly destructive of his property. Therefore the attitude of owners of the school and asylum lands throughout the state was practically one of armed resistance. The conditions were inimical to any effort at development, and the state was not realizing on its mineral estate in these lands. The purpose of the act was to meet this practical situation. Indeed, the rights of possession and user of the land as a whole by both the owner of the soil and the owner of the minerals, they being joint owners of the land, are mutual and blended. As in other joint ownerships, necessarily there must be co-operation. If the joint owners do not co-operate, confusion is bound to arise, the purposes and efforts of each are jeopardized and destroyed, and the state suffers loss, not only to its mineral estate, but likewise as a sovereign in the administration of justice. The Legislature has brought about this desired result in a lawful manner by requiring the purchaser of the oil and gas to compensate the owner of the soil for the use he makes of the surface, independent of the price he pays for the minerals. He compensates said owner for the inevitable damages of oil exploration and operation. The landowner acquires no estate in the oil and gas. He simply has a right to receive the compensation from the lessee out of the lessee's production as the statute provides.

"The payments to be made to the owner of the surface 'in lieu of all damages to the soil' is a matter of interest primarily to the landowner and the oil operator. It is the oil operator who injures or destroys the owner's land. But the state is also interested as a sovereign doing justice between its citizens and also as the vendor to the landowner.

"The provision that the payment of the 10 cents per acre per annum and the one-sixteenth of the production shall be 'in lieu of all damages to the soil' shows clearly that same was not regarded as a part of the consideration for the sale of the oil and gas.

"It becomes unnecessary for us to decide whether or not the Legislature in the sale of the oil and gas in these lands could have protected the owner of the soil and have secured to him that which he had bought from the state, by providing that he should receive a part of the oil and gas, or their proceeds, or to decide whether he could be compensated for services in selling them out of the proceeds of the sale. Therefore it is the reasonable, and, we think, the correct, interpretation of the act that the provisions for payment to him of like amounts paid to the state are not

a division of the proceeds of the sale of the oil and gas, but an act of the Legislature, in the exercise of its sovereign lawmaking powers, making just and equitable provision for protecting its citizens in their property rights it has sold them."

From the wording of the statute itself and from the holding of the court above quoted, it appears that the sole purpose of the Legislature was to bring about the co-operation of the owner of the surface and secure his assistance in the exploration for and the development of the mineral estate under these lands.

If we are to give effect to the holding of the Supreme Court, it is also apparent that the method adopted by the Legislature to bring about the desired result was to have the lessee or purchaser pay to the owner of the surface certain compensation for damages to the surface. Therefore it will follow that their intention was to give the compensation to the person who was the owner of the surface at the time the damage occurred.

This would mean that the right to collect compensation for such damages would follow and could not be separated from the surface ownership. To hold otherwise, in view of the above holding, would be to nullify the very purpose the Legislature had in mind when it enacted the statute.

The present case is a striking example of the effect of such a holding.

If it be true, as contended by appellees, that the White Land & Cattle Company could assign its rents and royalties under the leases, and could transfer the surface reserving such rights, then we would find appellant, as the owner of the surface with everything to lose and nothing to gain by the discovery and development of an oil field on the land, and his natural attitude would be what the Supreme Court has described as "practically one of armed resistance."

We would be further faced with a condition where a party was collecting compensation for damages to his property after he had ceased to be the owner thereof, which compensation the Supreme Court has said was allowed him for the purpose of securing his co-operation in the development of the state's mineral interest.

■ After a careful reading of the briefs of the parties and of the many authorities cited, we have reached the conclusion that the White Land & Cattle Company, as the owner of the soil, had a right to collect the rentals and royalties reserved to the owner of the surface in the leases executed by White et al.; that such right continued as long as it remained the owner of the surface, but was terminated when it parted with the surface ownership; that such right was assignable, but that the rights of the assignees thereof also terminated upon the sale of the surface;

and that appellant became entitled to collect all rentals and royalties accruing after he became the owner of the surface estate.

If we are correct in this holding, then the judgment of the trial court should be reversed and the judgment here rendered which that court should have rendered.

When, however, we come to rendering such judgment, we are confronted with the question as to what portion of the rents provided for in the leases and which have accrued since his ownership of the surface began, appellant is entitled to recover from appellees.

■ It is clear that he will be entitled to recover only such portion as is allowed him by the Relinquishment Act.

In Greene v. Robison, supra, the Supreme Court used the following language relative to the respective interests of the state and the surface owner in the amounts received from a sale or lease of the mineral interest of the state: "We interpret the act to fix a minimum price of 10 cents per acre per annum and the value of one-sixteenth of the gross production free of cost to the state, for which the state is willing to sell the oil and gas, and the agent is authorized to secure the highest price obtainable for the benefit of the fund to which the land belongs; like amounts received by the state to be paid by the purchaser to the owner of the soil. If a bonus is paid, if a larger royalty or other amounts are contracted for, the state and the owner of the soil receive equally in like amounts"

In Empire Gas & Fuel Co. v. State, 21 S.W. (2d) 376, the Austin Court of Civil Appeals held that the state was entitled to one-half of a cash bonus and one-half of the rentals remaining after deducting the 10 cents paid the state. The court based its holding upon the language above quoted, but, when the case reached the Supreme Court on an application for a writ of error, that court granted the writ "on the importance of the question."

■ As we understand the decision and the questions involved in Greene v. Robison, the interpretation above referred to was not necessary to the decision of any question then before the court; therefore it can have no authoritative value.

■ From a study of the Relinquishment Act itself, and in view of the decision in Greene v. Robison, we are constrained to disagree with the holding of the Austin court. The court held in the Greene Case that the amount to be paid by the lessee or purchaser to the owner of the soil was to compensate him for damages to the soil, and only by that holding did the court sustain the constitutionality of the act.

Under the provisions of article 5379 the owner accepts the 10 cents per acre and the

one-sixteenth of the production in lieu of all damages to the soil.

This, in effect, says that those amounts are all he will be entitled to receive for his damages. Therefore, if the compensation provided for by the act is only for damages to the soil, and the act itself provides that he must accept the 10 cents per acre and the one-sixteenth of the production in lieu of all his damages, how can it be said that he is entitled to more. We have concluded that he is entitled to a rental of only 10 cents per acre, and that any rental over and above that sum goes to the state.

Therefore, appellant here is entitled to recover from appellees the sum of $75.31 instead of $112.95, as mentioned by the parties in their briefs.

In accordance with the above views, the judgment of the trial court is reversed, and judgment is here rendered canceling the assignments executed by the White Land & Cattle Company to Lemar, and removing all clouds cast upon appellant's title by reason thereof, and that appellant recover of and from appellees, jointly and severally, the sum of $75.31.

Reversed and rendered.

### On Motion for Rehearing.

█ Appellees in their motion for rehearing contend that we erred in our original opinion in rendering a joint and several judgment against them for the delay rentals on the land in question.

Their position is well taken. It appears from the agreed facts that all delay rentals to the time of trial were paid by the respective lessees to those claiming the same by virtue of the mineral deed from the White Land & Cattle Company to H. E. Lemar.

We find from an examination of the record that the White Land & Cattle Company by said deed conveyed to Lemar all its interest in the rentals on said land; that he in turn conveyed all the delayed rentals on the west one-half of section 112, block 11, to the Magnolia Petroleum Company, and one-eighth of the delay rentals on section 122, block 11, to A. C. Butler.

By virtue of the agreement then, it appears that the rentals which have become due since appellant became the owner of the surface have been paid to Lemar, Butler, and the Magnolia Petroleum Company.

The judgment in this case should be that appellant recover of and from Magnolia Petroleum Company the sum of 10 cents per acre on 113.10 acres, the number of acres in the west one-half of section 112, block 11, or $11.31, from Butler the sum of $8, being one-eighth of the rental paid on section 122, block 11, and from Lemar $56, or the remaining seven-eighths of the rental paid thereon.

The judgment heretofore rendered is amended, and judgment is now rendered that appellant recover of and from Magnolia Petroleum Company the sum of $11.31, from A. C. Butler the sum of $8, and from H. E. Lemar the sum of $56.

The motion for rehearing is in other respects overruled.