# JUNE, 1932

H. E. LEMAR ET AL. V. J. W. GARNER.

No. 6007.   Decided June 1, 1932.
(50 S. W., 2d Series, 769.)

*Rex Baker* and *R. E. Eagler*, both of Houston, *W. B. Silli-man*, of Fort Stockton, *W. H. Francis*, *A. S. Hardwicke* and *Walace Hawkins*, all of Dallas, for plaintiffs in error.

*Rentals and royalties are property rights and as such are assignable as any other property.* The rentals and royalties provided for under an oil and gas mineral lease executed by a land owner as agent for the State of Texas covering lands sold on a mineral classification are assignable and are severable and separable from the ownership of the surface estate. Hoffman

504

v. Magnolia Petroleum Company, 273 S. W., 828; Hager et al. v. Stakes, Tax Collector, 116 Texas, 453, 294 S. W., 835; State v. Hatcher, 115 Texas, 332, 281 S. W., 192; Ehlinger v. Clark, 117 Texas, 547, 8 S. W. (2d) 666; 5 C. J., 851; 5 Texas Jur., p. 7; 2 R. C. L., 598.

The mineral deed executed by the White Land & Cattle Company to H. E. Lemar, in so far as it undertakes to convey and effect a sale of the State's reserved oil, gas, and mineral estate in said land subject to a valid existing oil and gas lease, does not constitute a cloud upon the separate, distinct, and independent title to the surface estate removable at the suit of plaintiff, claiming title to the surface estate only. Cox v. Robison, 105 Texas, 426, 150 S. W., 1149; Greene v. Robison, 109 Texas, 367, 210 S. W., 498; Greene v. Robison, 117 Texas, 533, 8 S. W. (2d) 655; State v. Hatcher, 115 Texas, 332, 281 S. W., 192; Sawyer v. Robison, 268 S. W., 151; McDonald v. Dees, 15 S. W. (2d) 1075; Ellsworth v. Hill, 21 S. W. (2d) 741; Gulf Production Co. v. Colquitt, 25 S. W. (2d) 989; Herndon v. Hayter, 28 S. W. (2d) 885; McDaniel v. Robison, 117 Texas, 544, 8 S. W. (2d) 663.

The so-called rentals and royalties payable by the State's lessee to the owner of the surface estate under the terms of an existing oil and gas lease made by the State on its severed and reserved oil, gas, and mineral estate, pursuant to Articles 5367 et seq., R. S., 1925, may be by the owner of the surface estate several therefrom and reserved or assigned so as to bind a substitute or subsequent purchase buying the surface estate stripped of such benefits. Farmers & Mer. State Bank v. Tullos, 211 S. W., 847; Bibb v. Nolan, 6 S. W. (2d) 156; Japhet v. McRae, 276 S. W., 669; Robinson v. Jacobs, 113 Texas, 231, 254 S. W., 309.

The sale by the State of its oil, gas, and mineral estate through the "current owner of the soil," White Land and Cattle Company, to H. E. Lemar under the deeds involved, pursuant to and in compliance with Articles 5367 et seq., R. S., 1925 (chapter 81, Acts 2d c. s. 37th Leg., 1921, Gammel's Laws, vol. 19, p. 249; Chapter 38, Acts 1st c. s. 37th Leg., 1921, Gammel's Laws, vol. 21, p. 112—Relinquishment Act), subject to existing valid oil and gas leases, both as a sale of the State's oil and gas and mineral estate and as an assignment of rentals and royalties accruing under the existing leases and that might accrue upon the termination of said leases, is valid and enforcable to the extent that such instruments can constitute a cloud upon plaintiff's title to the surface estate; and the reservations under the

deeds through which appellant holds title to the surface estate, made subsequent to such mineral deeds, are valid and enforcable. Hager v. Stakes, 116 Texas, 453, 294 S. W., 835; Greene v. Robison, 117 Texas, 533, 8 S. W. (2d) 655; State v. Hatcher, 115 Texas, 332, 281 S. W., 192; Ehlinger v. Clark, 117 Texas, 547, 8 S. W. (2d) 666; Buvens v. Robison, 117 Texas, 546, 8 S. W. (2d) 664; Boykin v. Southwest Texas Oil & Gas Co., 256 S. W., 581; Nations v. Miller, 107 Texas, 616, 183 S. W., 153.

*B. F. Howell,* of Rankin, and *Kerr & Gayer* and *J. A. Thomas,* all of San Angelo, for defendant in error.

The mineral deeds to appellees conveyed no title. At the time of the execution of those instruments the grantors therein, owners of the surface, had no estate to convey in the oil and gas. A defeasable title to most of those minerals was then vested in the oil and gas leases whose interests were expressly excluded; title to all of the balance of the oil and gas and minerals, and to the remainder and rights of reversion were still in the State of Texas, and the Land & Cattle Company had no authority to convey the State's interest therein.

The authority of the surface owner under the Relinquishment Act to act as agent for the State and to receive the statutory compensation and damages for which that act provides, can not, until the purpose of that Act be accomplished, be delegated or separated from the ownership of the soil. Revised Statutes, 1911, art. 5433; R. S., 1895, art. 3498; R. S., 1925, arts. 5367-8, 5370-5372, 5379; Greene v. Robison, 117 Texas, 532, 8 S. W. (2d) 655; McDonald v. Dees, 15 S. W. (2d) 1075; Herndon v. Hayter, 28 S. W. (2d) 885; Henessy v. Automobile Owners Ins. Assn., 282 S. W., 791.

Appellant is not estopped by the reservation in the deed from White Land & Cattle Company to F. B. Carter, nor by the reservations in the deed from F. B. Carter to appellant. On the contrary these reservations are void, and appellant as assignee of the Land & Cattle Company now holds and may enforce all rights of the Land & Cattle Company for repudiation of the instrument and is entitled to collect the rentals retained by appellees thereunder. McCall v. Whaley, 115 S. W., 658.

*Walter L. Kimmel,* of Tulsa, Okla., and *Harris, Harris & Sedberry,* of San Angelo, as amicus curiae.

Mr. Judge SHARP of the Commission of Appeals delivered the opinion for the court.

We adopt the statement of the nature and result of this case made by the Court of Civil Appeals in its opinion as follows:

"G. S. White et al., the then owners of the soil, on November 30, 1923, executed a ten-year mineral lease on the west half of section 112, block 11, H. & G. N. Railway Company lands in Pecos county, Texas, to John Sealy and others, as trustees for the Magnolia Petroleum Company, with undivided delay rental at 25 cents per acre and a one-eighth oil and gas royalty reserved.

"On October 9, 1925, White et al. leased to F. J. Ellyson for ten years the north half of section 122, block 11. This lease provided that 10 cents per acre of the delay rental should be paid to the land commissioner and 15 cents per acre to the landowners, and reserved a one-sixteenth royalty each to the state and owner of the soil.

"A like lease was executed on the same date by the same parties on the south half of said section. John Sealy and the other trustees, on April 19, 1926, conveyed the lease on section 112 to the Magnolia Petroleum Company, a corporation. Ellyson, on November 21, 1925, assigned his lease on the south half of section 122 to the Pure Oil Company, and on January 4, 1926, assigned his lease on the north half of said section to the Gulf Production Company.

"On October 6, 1926, G. S. White et al. conveyed the above lands, together with others, to the White Land & Cattle Company.

"The following January the White Land & Cattle Company executed a mineral deed conveying the mineral estate in said land to H. E. Lemar, and assigned to him the unaccrued rentals and royalties.

"Later Lemar conveyed by mineral deeds a one-fourth mineral interest and royalty in sections 112 and 122 to Humble Oil & Refining Company, a one-half mineral interest and royalty and all delay rental on the west half of section 112 to Magnolia Petroleum Company, a one-eighth mineral interest and royalty and one-eighth delay rental in section 122 to A. C. Butler, and a one-eighth mineral interest and royalty in section 122 to Gar-Tex Oil Company.

"On January 19, 1929, the White Land & Cattle Company conveyed the above sections to F. B. Carter, who, on the 2d day of April, following, conveyed the land to appellant, J. W. Garner.

"The deeds from the White Land & Cattle Company to

Carter and from Carter to appellant both provided that they did not include the mineral rights on the land; it being understood that they had been theretofore conveyed.

"Appellant filed this suit in the district court of Pecos county against Lemar, Butler, Humble Oil & Refining Company, Magnolia Petroleum Company and Gar-Tex Oil Company.

"He alleged that he was the 'owner of the soil' within the meaning of articles 5367 and 5382, Revised Statutes of 1925; that on December 9, 1911, and January 30, 1907, respectively, the lands in question were a part of the public free school lands of the state of Texas and had been classified as mineral and grazing lands; that thereafter they were sold with a reservation of the minerals to the state of Texas; that appellees had caused to be recorded in the deed and lease records of Pecos county certain pretended conveyances, transfers, and assignments to them of all the oil, gas, and mineral rights appurtenant to said lands, including the pretended right to collect all lease moneys, bonuses, rentals, and royalties; that, acting under said conveyances, they have collected all the rentals accruing thereunder; that they are still claiming various interests in the mineral rights on the lands and claim the right to continue collecting the rentals on said lands and to appropriate the same to their own use and benefit; that at the time of such pretended conveyances, appellees were not the 'owners of the soil'; that, by reason thereof, such conveyances are null and void; that a cloud is cast upon the title of appellant by the pretended claims of appellees, thereby depriving him of his rights in connection with the ownership of the lands, and that he has no adequate legal remedy, because the amount of his damages could not be accurately determined; that appellees never paid to the owners of the soil more than $24,560 for the twentyfour sections, and that he was ready, able, and willing to pay to appellees the sum of $918 as full compensation which they had paid the owners of the soil for the minerals in the lands in question.

"He prayed for judgment quieting his title, together with all the rights and privileges to which he is in any way entitled in connection therewith, and for the removal of all clouds cast thereon.

"Appellees answered by general demurrers, general denial, and pleas of not guilty, and alleging that the oil and gas leases executed by G. S. White et al. to Magnolia Petroleum Company and to Ellyson are in full force and effect, that all covenants and conditions therein, including the payment of rentals and royalties to the state, have been complied with, and that appel-

lant purchased the surface estate subsequent to and with full knowledge of the mineral deeds, and that the surface estate was impressed by express reservation with their rights, titles, and interests. The case was submitted to the court without the intervention of a jury and upon hearing, the court rendered judgment that appellant take nothing."

From the judgment of the trial court J. W. Garner appealed to the Court of Civil Appeals at El Paso and that court reversed the judgment of the trial court and rendered judgment in favor of J. W. Garner that he recover of and from Magnolia Petroleum Company the sum of $11.31, from A. C. Butler the sum of $8 and from H. E. Lemar the sum of $56. 38 S. W. (2d) 161. From this judgment Lamar et al. applied to the Supreme Court for a writ of error which was granted.

Plaintiffs in error contend: (1) That the Court of Civil Appeals erred in holding that the Relinquishment Act, and particularly Articles 5367, 5368 and 5379, R. S., 1925, prohibits the owner or purchaser of the surface estate of Public School Lands who has contracted with the State's oil and gas lessee thereon for rental and royalty payments from severing and separating such surface owner's payments from the surface estate and transferring and conveying such payments and surface estate into separate and different ownerships. (2) That the Court of Civil Appeals erred in holding that plaintiffs in error's title and right to the rental and royalty paid and contracted to be paid by the State's oil and gas lessee under existing oil and gas leases terminated and vested in defendant in error upon his purchase of the surface estate, because the uncontradicted evidence is that plaintiffs in error acquired and held under valid assignments from the owner of the soil such rental and royalty payments accrued or accruing under said oil and gas leases, and thereafter defendant in error purchased the surface estate only, the so-called rentals and royalties being expressly excepted and reserved from his purchase. (3) That the Court of Civil Appeals erred in holding that the Relinquishment Act, and particularly Article 5379, R. S., 1925, limits the owner of the surface and his assigns to a so-called rental of ten cents per acre per annum, and that all rental contracted for by the owner of the surface in excess of such amount is payable to the State and no part thereof may be collected and received by the owner of the surface or his assigns, the plaintiffs in error.

The Court of Civil Appeals held:

"Appellant, in his brief, presents seven propositions of law

upon which he depends for a reversal of the judgment; but, as we view the record, the rights of the parties can be determined by ascertaining the correct answer to the following questions: (1) Are the rights secured to the surface owner of land by the 'Relinquishment Act' (Rev. St. 1925, Arts. 5367-5382) the subject of assignment? (2) Do his rights to rentals and royalties terminate upon a sale by him of the surface estate? and (3) Is a subsequent owner of the surface estate entitled to the rentals and royalties which accrue subsequent to his acquisition of the surface estate?

"We are of the opinion that these questions should be answered in the affirmative."

The questions presented in this case involve the construction of the Relinquishment Act (Articles 5367-5382, R. S., 1925). The pertinent parts thereof read as follows:

"Art. 5367. The State hereby constitutes the owner of the soil its agent for the purpose herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds."

"Art. 5368. The owner of said land is hereby authorized to sell or lease to any person, firm or corporation the oil and gas that may be thereon or therein upon such terms and conditions as such owner may deem best, subject only to the provisions hereof, and he may have a second lien thereon to secure the payment of any sum due him. All leases and sales so made shall be assignable. No oil or gas rights shall be sold or leased hereunder for less than ten cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the State ten cents per acre per year of sales and rentals; and in case of production shall pay the State the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil."

"Art. 5379. The payment of the ten cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be in lieu of all damages to the soil."

. This record discloses that Section 112, block 11, H. & G. N. Ry. Co. lands, and the 113.10 acres here involved, was sold in 1907 by the State with mineral classification, and Section 122, block 11, H. & G. N. Ry. Co. lands was sold in 1912 with mineral classification, both sections being Public School Land; and that G. S. White et al., at that time being the owners thereof, in October and November, 1925, acting under Article 5367, R. S., 1925, executed oil and gas leases on the land, for the terms and reserving the rental and royalty to the lessors, "their successors and assigns," as follows:

(1) West Half Section 112, the term fixed being ten years expiring November 30, 1935, and providing on undivided delay rentals at 25c per acre and $\frac{1}{8}$ oil and gas royalty, and this lease was executed to the trustees of the Magnolia Petroleum Company, as lessee.

(2) North Half Section 122, for a fixed term of ten years, expiring October 9, 1935; divided delay rentals at 10c per acre to the Land Commissioner and 15c per acre to the owner of the soil, with divided royalty on oil and gas 1/16 to the Land Commissioner and 1/16 to the owner of the soil. This lease was transferred to the Gulf Production Company, present lessee.

(3) South Half Section 122, for a fixed term of ten years, expiring October 9, 1935, divided delay rentals at 10c per acre to the Land Commissioner and 15c per acre to the owner of the soil with a divided royalty on oil and gas 1/16 to the Land Commissioner and 1/16 to the owner of the soil. This lease was transferred to the Pure Oil Company, present lessee.

G. S. White et al., one year later conveyed the surface estate, without express mention of such rentals and royalties accruing to the surface owner, to the White Land & Cattle Company, and the White Land & Cattle Company while owner of the soil and about one year and three months after said oil and gas lease had been made, executed a mineral deed to H. E. Lemar conveying the mineral estate in said land and assigning the land owner's unaccrued rentals and royalties.

Later Lemar conveyed all mineral deeds and $\frac{1}{4}$ mineral interest and royalty in Sections 112 and 122 to the Humble Oil & Refining Company, and $\frac{1}{2}$ mineral interest and royalty and all delay rentals on the West Half of Section 112 to the Magnolia Petroleum Company, and $\frac{1}{8}$ mineral interest and royalty and $\frac{1}{8}$ delay rentals in Section 122 to A. C. Butler and $\frac{1}{8}$ mineral interest and royalty in Section 122 to Gar-Tex Oil Company.

Approximately three years and three months after the date

of the oil and gas leases above described and two years and three months after the rentals and royalties thereunder had been assigned by the owner of the soil to Lemar, J. W. Garner became the substitute purchaser of the surface estate under deed from White Land & Cattle Company to Carter and deed from Carter to himself, each deed expressly reciting the previous sale of the mineral rights in said land and reserving the same to the grantors.

The reservations of the minerals in said deeds are, respectively, as follows:

(1) White Land & Cattle Company to Carter:

"This deed does not cover or include the mineral rights the land hereby conveyed, it being understood that the said minerals have been heretofore conveyed by the grantor, and the same is not included and is not conveyed by this deed."

(2) In the deed from Carter to Garner:

"This deed does not cover or include the mineral rights in the land hereby conveyed, it being understood that the said minerals have heretofore been conveyed and the same is not included and is not conveyed by this deed."

■ It has long been the policy of the law of this State that a grant or reservation of minerals includes the mineral easement, the necessary right to use the surface of the earth in the enjoyment of this mineral estate. The State must have the easement of going upon the land for this purpose and also has the right to go on the land and use it in the conduct of mineral operations. The ownership of gas and oil in place carries with it the exclusive right to possess, use and dispose of the gas and oil. Cowan v. Hardeman, 26 Texas, 217; Cox v. Robison, 105 Texas, 426, 150 S. W., 1149; Empire Gas & Fuel Co. et al. v. State, ante., 47 S. W. (2d) 265.

■ The authoritative decisions of this State establish the following elementary rules, to-wit:

(1) That oil and gas in place are part of the realty and are susceptible of ownership and may be conveyed as any other interest in realty by appropriate conveyance, and that the ordinary form of oil lease in general use is in effect a sale of the portion of the land.

(2) That a severance of minerals may be made by an exception or reservation in the deed conveying the land.

(3) When a severance of the minerals is accomplished, each estate, that is the minerals in place and that in the re-

mainder of the land, may be a freehold, or an estate in fee simple.

Hager v. Stakes, 116 Texas, 453, 294 S. W., 835; Humphreys-Mexia Co. v. Gammon, 113 Texas, 247, 254 S. W., 296; Caruthers v. Leonard, 254 S. W., 779; Texas Co. v. Daugherty, 107 Texas, 226, 176 S. W., 717; Stephens County et al. v. Mid-Kansas Oil & Gas Co., 113 Texas, 160, 254 S. W., 290, 29 A. L. R., 566; Texas Co. et al. v. Davis et. al., 113 Texas, 321, 254 S. W., 304; Munsey v. Marnet Oil & Gas Co., 113 Texas, 212, 254 S. W., 311; Thomason v. Ham, 113 Texas, 239, 254 S. W., 316; State v. Hatcher, 115 Texas, 336, 281 S. W., 192; Thiesen v. Robison, 117 Texas, 489, 8 S. W. (2d) 646; Sawyer v. Robison, 114 Texas, 437, 268 S. W., 151; Waggoner Estate v. Sigler Oil Co., 118 Texas, 509, 19 S. W. (2d) 27.

■ It is contended, and the Court of Civil Appeals so held, that the owner of land who executed the mineral lease could not assign his interest in the lease. There is nothing in the Relinquishment Act that expressly prohibits the severance and the separate assignment of these payments by the surface owner. The mineral leases in controversy run for a certain period of time and were executed by the owner of the soil. Evidently, the Legislature did not intend to require an impossible or impracticable thing. If the contention urged by defendants in error be sound, then no lease executed by the owner of the land would rest upon any security, and the validity of the lease would be subject to every change of ownership of the land. The adoption of such a rule would materially impair the value of any mineral lease executed under the provisions of this law. No person would desire to pay a fair and reasonable price for a mineral lease under such unstable conditions.

■ Article 5368, after providing that the owner of the land is authorized to sell or lease to any person, firm or corporation the oil and gas that may be thereon upon such terms and conditions as such owner may deem best, subject only to the provisions thereof, further provides that "all leases and sales so made shall be assignable." In the case of Greene v. Robison, 117 Texas, 533, 8 S. W. (2d) 655, it was held that by the terms of the Relinquishment Act it is meant that the oil and gas in place shall not vest in the owner of the soil as his property, but that it means that fifteen-sixteenths of the minerals and one-half of any and all amounts received above 10c per acre per annum as rental shall be allowed the owner of the land for his services as agent of the State in making the mineral leases. In

our opinion, the Act when fairly and reasonably construed, also means that all minerals not disposed of go with the title of the the land, subject to the provisions of the Act. That when a valid and binding lease or conveyance of the minerals is made by the owner of the land, as the agent of the State, then in that event he receives the foregoing amounts as compensation for his services. His share of the rentals, royalties and bonuses derived from the leases executed by him become property rights during the period of time for which the lease runs. Prior to the making of the mineral lease the owner of the land has no right to assign or convey any mineral rights in the property. It is the intention of the law that the owner of the land shall be the agent of the State to execute mineral leases. Whenever a mineral lease executed by a prior owner terminates, the then owner of the land becomes the agent of the State with authority to sell or lease the oil and gas mineral rights, as provided for in the Relinquishment Act.

■ The rule is well established that it is not the policy of the law of this State to favor restraints upon alienation of property. The courts of this State have established the rule that rents or royalties payable under oil and gas mineral leases are severable and separable from the ownership of the surface estate and are property rights, and having established this rule with respect to such property, we think, under the policy of the law of this State, that they are assignable by the owner thereof.

Article 569, R. S., 1925; Hoffman et al. v. Magnolia Petroleum Co., 273 S. W., 828; Dittman v. Model Baking Co., 271 S. W., 75; 5 C. J., p. 851; volume 5, Texas Jurisprudence, p. 7; 2 R. C. L., p. 598.

■ Regardless of the provisions of the Act above quoted, the very deed under which Garner claims title expressly provides that the conveyance to him did not include the mineral rights, but in plain and positive language stated that the minerals had already been conveyed and that they were not included in the deed made to him.

The Court of Civil Appeals in the course of its opinion further held:

"Under the provisions of article 5379 the owner accepts the 10 cents per acre and the one-sixteenth of the production in lieu of all damages to the soil.

"This, in effect, says that those amounts are all he will be entitled to receive for his damages. Therefore, if the compensation provided for by the act is only for damages to the

soil, and the act itself provides that he must accept the 10 cents per acre and the one-sixteenth of the production in lieu of all his damages, how can it be said that he is entitled to more? We have concluded that he is entitled to a rental of only 10 cents per acre, and that any rental over and above that sum goes to the state."

■ This holding of the Court of Civil Appeals conflicts with the holding of the Supreme Court in the following cases: Greene v. Robison, supra; Empire Gas & Fuel Co. et al. v. State, ante., 138, 47 S. W. (2d) 265. It was held in those cases that the Relinquishment Act authorizes the oil and gas to be sold retaining to the State as a minimum 1/16 of all gas and minerals as royalty and 10c per acre per annum and ½ of all amounts received by the owner over and above the foregoing amounts. In other words, it logically follows that by the language used in this Act, as construed by the Supreme Court, the State is to receive as a minimum for the sale of the gas and oil 1/16 of all gas and minerals as royalty and 10c per acre per annum as rental and all amounts received over and above the foregoing amounts shall be equally divided,—½ to be received by the State and ½ to be received by the owner of the land for his services in making the lease as the agent of the State during the term of the lease.

It is not contended that the leases above described were not executed in good faith by the owner of the soil, as the agent of the State, and the other parties thereto. There is no contention made here that the leases run for an unreasonable period of time, or that by their terms all the rights guaranteed the State under the Relinquishment Act, as construed by the opinions of this court, are not fully recognized and protected.

■ A construction of the mineral leases above described, executed by the owner of the land, and the deed conveying the land to Garner, when construed in the light of the provisions of the Relinquishment Act, leads to the inevitable conclusion that the oil and gas were expressly reserved and separated from the surface estate and that Garner has no title, interest or estate therein during the terms of the leases. He acquired his title subject to the leases and his deed in plain and express terms so states that the minerals were not intended to be conveyed therein, but had already been conveyed and were expressly reserved. It follows that Garner has no basis for his claim; that the judgment of the trial court is correct and the judgment of the Court of Civil Appeals is incorrect.

The judgment of the Court of Civil Appeals should be reversed and the judgment of the trial court should be in all repects affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

.    C. M. CURETON, Chief Justice.