

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**

AUSTIN 11, TEXAS

XXXXXxXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner
General Land Office
Austin, Texas

Dear Sir:

Opinion No. 0-5700
Re: Power of Commissioner of General
Land Office to accept for filing or
to approve mineral lease with pool-
ing clause.

Reference is made to your letter of recent date to which you attached
a copy of an oil and gas lease relating thereto. Your letter is as follows:

"There has been tendered to this department for filing the en-
closed mineral lease. This lease was executed by the land owner on
a small tract of scrap land sold under Chapter 271, Acts of the 42nd
Legislature, Regular Session, 1931. This law and the application to
purchase provide for a reservation to the State of a free royalty of
1/8 of the sulphur and 1/16 of the other minerals.

"The lease in paragraph five (5) thereof provides for pooling
or combining this tract with other tracts whether owned by the les-
see or not for the purpose of creating drilling units, and as to the
payment of royalty the lease provides as follows:

"'In the event production of oil, gas, or other minerals is ob-
tained upon any unit or units created hereunder Lessor shall receive
and will accept on account of any such production, regardless of whe-
ther or not such production is on any part of the land herein above
described, a royalty equal to such portion of a 1/8 royalty as the
number of acres out of this lease and included in any such operating
unit bears to the total number of acres included in the respective op-
erating unit.'

"If the above provision in the lease is binding on the State, the
State would share in the production from the unit on the basis of 1/8
of the sulphur and 1/16 of all other minerals figured in the proportion
that the acreage in this tract bears to the total acreage in the unit.

With the above facts in mind, I would like to have the benefit of your opinion on the following question:

"(1) Does the Commissioner of the General Land Office have the legal authority to file in this office or to approve a mineral lease such as the above providing for a combination of a tract in which the State has a mineral interest fixed by law with other tracts, in which the State has no interest, in order to form a drilling unit?

"Since the decision in the Wintermann Case (102 S W 2 167), this department has construed the Sales Act of 1931, as fixing the States Royalty at 1/8 of the Sulphur and 1/16 of all other minerals, and has declined to accept any part of the Bonus and rental for a lease executed by the land owner. We have also followed this construction of House Bill 9, Acts of 1939.

"The latter part of Section 2 of House Bill 9 provides as follows:

"'Provided, however, that nothing in this Act shall be construed as removing from or interfering with the rights and powers of the surface owner of land sold or to be hereafter sold by the State, with a mineral reservation, to act as agent of the State in making and executing mineral leases covering and affecting such lands, but the authority of such surface owner shall remain the same as provided by law, and is in no wise abridged, modified or removed by this Act.'

"Section 4-a of House Bill 9 reads as follows:

"'No mineral lease executed by an owner or owners of land or minerals under what is commonly known as the Relinquishment Act, shall be effective until a certified copy of such lease is filed in the Land Office. No such lease executed after the effective date hereof shall be binding upon the State unless it recites the actual and true consideration paid or promised therefor.'

"If I am correct in the above conclusions, I shall appreciate your opinion on the following questions in addition to Question No. 1 propounded above:

"(2) Do leases issued by the land owner on Public School Lands, sold under the Sales Act of 1931, come within the provision of what is known as the Relinquishment Act?'

"(3) Do leases issued by the land owner on Public School Lands, sold under the Sales Act of 1931, as amended by House Bill 9, Acts of 1939, come within the provisions of the Relinquishment Act?

"The Relinquishment Act, as I understand it, is embraced in Articles 5367 to 5379, inclusive, Revised Civil Statutes of 1925."

The validity of an agreement by owners of private lands to pool their respective interests, thus forming a drilling unit for the exploration and development of oil and gas, and to share the royalties from production on an acreage or other equitable basis, has been upheld by our appellate courts. However, the right of any statutory agent of this State, authorized to execute oil and gas leases on public land, either owned by the State in fee or on land sold with minerals reserved to the State, to include this land in such a pooling agreement has never been presented to the courts for determination.

In reviewing the statutes of this State, we are unable to find any Act of the Legislature which specifically deals with this subject. We do find, however, that the Congress of the United States amended the Leasing Act in 1931, to permit the unit development of a field or pool by lessees or permittees of the United States. (30 USCA Section 225) A number of the several States have either by amendatory Acts or special Acts authorized the inclusion of State owned land with that of private owners, in combinations to form drilling units for the exploration of oil and gas, where the royalties are to be distributed on an acreage or other equitable basis.

In the absence of specific statutory authority in Texas in this respect, we think it necessary to review some of the more important Acts of the Legislature which deal with the mineral laws as they relate to public lands. The courts of this State have held that the mineral laws of Texas dealing with public land are to a large extent patchwork, each law being cumulative of the other, and no new law repealing a prior law, unless clearly repugnant as to the prior law. (Magnolia Petroleum Company vs. Walker, 83 S. W. (2d) 929) For the purpose of this review, we adopt that given by the Supreme Court in the case of Wintermann vs. McDonald, 102 S.W. (2d) 167, which is as follows:

"The burden is placed on the Legislature to sell the public free school lands 'on such terms as may be prescribed by law.' Article 7, section 4, of the Constitution. In response to this command, many laws, including this act, have been passed. The extent

of the vast public domain of Texas placed a stupendous task
upon the Legislature to safeguard the rights of all concerned
by the enactment of proper laws. To accomplish this purpose
the Legislature has from time to time enacted many land laws.
We shall review only a part of them.

"Chapter 3, title 86, article 5306 et seq., R.S. 1925,
is generally known as the General Sales Law. This law furnishes
certain fundamental rules for the sale of public lands. As early
as 1883 the Legislature made provision to classify public lands
and sell the agricultural land to settlers; and the minerals there-
under were 'reserved by the State for the use of the fund to which
the land now belongs.' See Act of April 12, 1883, 9 Gammel's
Laws, 394; 31 Tex. Jur. p. 659.

"In 1919 the Relinquishment Act was passed. Article 5367
reads: 'The State hereby constitutes the owner of the soil its
agent for the purposes herein named, and in consideration there-
for, relinquishes and vests in the owner of the soil an undivided
fifteen-sixteenths of all oil and gas which has been undeveloped
and the value of the same that may be upon and within the sur-
veyed and unsurveyed public free school land and asylum lands
and portions of such surveys sold with a mineral classification
or mineral reservation, subject to the terms of this law. The
remaining undivided portion of said oil and gas and its value is
hereby reserved for the use of and benefit of the public school
fund and the several asylum funds. (Acts 2nd C.S. 1919, p. 249;
Acts 1st C.S. 1921, p. 112.)'

"Article 5368 describes the terms upon which the owner may
lease said land as the agent of the State.

"By the provisions of the Relinquishment Act the State con-
stitutes the owner of the soil its agent to sell or lease the oil and
gas that may be thereon or therein, upon such terms and conditions
as such owner may deem best, subject to the condition, among other
things, that one-sixteenth of the gas and oil, in case of production,
as a royalty shall be paid the State by the lessee. By its provisions
the State is to receive as a minimum for the sale of the gas and oil
one-sixteenth of all gas and oil as royalty, and 10 cents per acre
per annum as rental, and certain sums are to be received by the
owner of the land for his services in making the lease as the agent
of the State, during the term of the lease. This act was construed
to mean that the oil and gas in place shall not vest in the owner of
the soil as his property, but that he shall receive certain interests

in the minerals when a valid mineral lease has been executed by the owner of the surface estate as the agent of the State, in compliance with the terms of this act. The Relinquishment Act has been construed by this court in the following cases: Greene v. Robison, 117 Tex. 516, 8 S. W. (2d) 655; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S. W. (2d) 265, 274; Lamar v. Garner, 121 Tex. 502, 50 S. W. (2d) 769, 773.

In 1925 the Legislature passed the Repurchase Act (Chapter 94, and amended by the Acts of the 39th Leg. in 1926, 1st C. S., p. 43, c. 23, article 5326a, of Vernon's Annotated Civil Statutes). Section 3 of the act (Vernon's Ann. Civ. St., art. 5326a, § 3) contains the following language: 'One-sixteenth of the oil and gas, and all of other minerals in the lands included herein, whether known or unknown, are expressly reserved to the public free school fund in the event the forfeited sale was with mineral reservation.' The act was construed by this court in the case of Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W. (2d) 929, and it was held that the land had previously borne a mineral classification, and that when the land was repurchased under that act it was repurchased under the same classification, and that all minerals were reserved to the State. It was also held in that case that the Act of 1925 should be construed in connection with other laws relating to this subject, including article 5310 and the Relinquishment Act.

"In 1931 the 42nd Legislature enacted Senate Bill 310, chapter 23, article 5368a of Vernon's Annotated Texas Civil Statutes, which provided that title to fifteen-sixteenths of all minerals in all lands described in said act is vested in the owner of the soil, and one-sixteenth of the minerals as a free royalty was reserved to the State, in case of production, and the owner was authorized to develop said minerals, and might make such leases or sales of same as he might deem proper, subject only to the reservation of the State's one-sixteenth free royalty interest. The act further authorized the owner of the land, on his behalf and as agent for the State, as to the royalty reserved by the State, to develop said minerals, or to sell or lease said land for oil and gas and other mineral development and production, and shall deliver to the State a one-sixteenth part of said oil or gas or other minerals free of cost. Because this act violated several provisions of the Constitution, it was declared void in toto in the case of Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S. W. (2d) 265.

"House Bill 358, the act under consideration (now article 5421c, Vernon's Annotated Texas Civil Statutes), was enacted by the 42nd Legislature in 1931, c. 271, shortly after the enactment of Senate Bill 310. Both laws were passed by the same Legislature, and Senate Bill 310 was on the books, and had not been declared invalid, when House Bill 358 was passed. It clearly appears that House Bill 358 was enacted under the belief that Senate Bill 310 was a valid law, the owners of school land previously purchased would have the right to execute leases, for themselves and as the agents of the State, on the land for development of any mineral, which would include oil, gas, and sulphur.

Before the passage of the Relinquishment Act in 1919, the owner of public free school and asylum land, sold with minerals reserved to the State, could not validly execute an oil and gas lease on this land. With the passage of this Act, all public free school and asylum land sold, or thereafter sold, became subject to its terms except that land on which there was a then outstanding oil and gas lease; this became subject to its terms at the expiration of the lease, or in the case of production, at the cessation of production. While all lands once subject to the provisions of the Relinquishment Act remain so, this Act was replaced by the Sales Act of 1931, House Bill 358 as passed by the 42nd Legislature in 1931. This original Act and the amendment to it are now known as Article 5421c, Vernon's Annotated Civil Statutes. Thus, we find that all public lands in Texas in which the State has a mineral reservation, sold or to be sold, are subject to the terms of one or the other of these Acts.

Under the provisions of Article 5368, of the Relinquishment Act, and the Act of 1931, Article 5421c and the amendments thereto, the owner of the land is authorized as agent of the State to lease the land for oil and gas on such terms as he deems best, however, the authority of the owner as agent of the State and the terms of the lease are subject to the provisions of law under which the land was sold and to the cumulative effect of all mineral laws of Texas not repugnant to the particular Act. Regardless of which Act may govern in a particular case, we find that in each there is a definite reservation to the State of a minimum of one-sixteenth (1/16) free royalty.

Article 5368 provides in part:

". . . . No oil or gas rights shall be sold or leased hereunder for less than ten cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the State ten cents per acre per year of sales and rentals; and in case of production shall pay the State

the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil."

Article 5421c provides in part:

"Sec. 1. All lands heretofore set apart in the public free school funds under the Constitution and laws of Texas, and all of the unappropriated and unsold public domain remaining in this State of whatever character, except river beds, and channels, and islands, lakes and bays, and other areas within tide water limits, are subject to control and sale under the provisions of this Act.

". . . .

"Sec. 4. All land shall be sold without condition of settlement and with a reservation of one-sixteenth (1/16) of all minerals, as a free royalty to the State, . . .

". . . .

"Sec. 8. All islands, salt water lakes, bays, inlets, marshes, and reefs owned by the State within tidewater limits, and that portion of the Gulf of Mexico within the jurisdiction of Texas, and all unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner to any person, firm, or corporation for the production of minerals, except gold, silver, platinum, cinnabar, and other metals, that may be therein or thereunder, in accordance with the provisions of Chapter 271, Acts of the Forty-second Legislature, as amended, and Subdivision 2, Chapter 4, Title 66, Revised Civil Statutes of Texas of 1925, relating to leasing public areas, in so far as same is not in conflict herewith. Provided, however, that nothing in this Act shall be construed as removing from or interfering with the rights and powers of the surface owner of land sold or to be hereafter sold by the State, with a mineral reservation, to act as agent of the State in making and executing mineral leases covering and affecting such lands, but the authority of such surface owner shall remain the same as provided by law, and is no wise abridged, modified or removed by this Act. As amended Acts 1939, 46th Leg., p. 465, § 2."

The term "free royalty" was defined by Mr. Justice Greenwood of the Supreme Court in the case of Sheffield vs. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, as:

"The term 'free royalty' introduced into this Act must mean that the interest reserved to the State and the minerals produced on school lands sold under the terms of the Act, must not bear any expense of the production, sale, or delivery thereof."

Following the rule announced in the case of Magnolia Petroleum Company vs. Walker, supra, we find that public land leased for oil and gas is subject either to the terms of Article 5369 of the Relinquishment Act or to the terms of Article 5359, Vernon's Annotated Civil Statutes. Since they are similar in language and effect, we cite Article 5359, which is as follows:

"If oil or gas should be produced in commercial quantities in a well on an area privately owned when such well is within one thousand feet of an area leased hereunder, the owner of the lease on such State area shall, within sixty days after the initial production on such privately owned area, begin in good faith and prosecute diligently the drilling of an offset well or wells on the area so leased from the State. . . ."

In addition to that part of paragraph five of the attached lease, which you quote in your letter, there is the following provision that is important here:

". . . The commencement of a well or the completion of a well to production, and the production of oil or gas therefrom, on any portion of an operating unit in which all or any portions of the land described herein is embraced shall have the same effect, under the terms of this lease as if a well were commenced or completed on the land embraced by this lease. . . ."

Summarizing the cumulative effect of these laws, we deem it sufficient to say that the terms of a lease containing a pooling clause, such as is in the attached lease, are not in accord with the mineral laws of this State as they relate to public lands. Under the terms of this lease, the State would not receive the minimum one-sixteenth "free royalty" as is reserved by law, nor would the lessee be required to offset and develop public lands as required by law. It is the opinion of this department that the land owner, as agent of the State, does not have the authority to execute such an oil and

gas lease, nor does the Commissioner of the General Land Office have the legal right to accept for filing or to approve such a lease.

This office has previously held in Opinion No. 0-853, written to the Railroad Commission of Texas on May 30, 1939, that the Railroad Commission does not have authority to make a regulatory order requiring the owner or owners of small tracts of land to pool or combine them with other tracts as a prerequisite to granting a drilling permit for oil or gas.

With reference to the second part of your letter, this is to advise that the construction your office has given the Sales Act of 1931 is in accord with that given by the Attorney General in Opinion No. 0-458, written to you on July 18, 1939, copy of which is attached.

We will consider your second and third questions together since House Bill 9, Acts of 1939, amending House Bill 358, Acts of 1931, did not change the effect of the original acts as it relates to your questions. The original act and the amendment to it are now codified as Article 5421c in Vernon's Annotated Civil Statutes.

The Supreme Court in the case of Wintermann vs. McDonald, supra, interpreted Article 5421c in this respect, as follows:

"House Bill 358 and the Relinquishment Act should be construed together. It is plain that the 1931 Act is not intended to repeal the Relinquishment Act; nor does the Relinquishment Act occupy the field covered by this law. This law covers a wider field than the Relinquishment Act. The land sold under the provisions of this Act will be governed by the terms thereof, and not by the terms of the Relinquishment Act. (Emphasis ours)

It follows that your second and third questions are answered in the negative, which is in accordance with the holding in our Opinion No. 0-458, addressed to you under date of July 18, 1939.

Yours very truly

APPROVED DEC 10, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Approved
Opinion
Committee
By _____
Chairman

ATTORNEY GENERAL OF TEXAS

By Jack W. Rowland
Jack W. Rowland
Assistant

JWR:mb