**The STATE of Texas, Appellant,**

**v.**

**B. L. STANDARD et al., Appellees.**

**No. 4046.**

Court of Civil Appeals of Texas.

Eastland.

March 25, 1966.

Rehearing Denied April 15, 1966.

J. Milton Richardson, Asst. Atty. Gen., Austin, Tom Gordon, Abilene, for appellant.

W. J. Rutledge, Jr., Abilene, for appellees.

WALTER, Justice.

The State of Texas on behalf of the Permanent Free School Fund filed suit against B. L. Standard and wife, W. J. Rutledge, Jr., W. K. Rutledge and R. M. Rutledge, Trace Mining Company, and Humble Oil and Refining Company to remove cloud from the title to the mineral estate underlying a 60⅔ acre tract of land in Taylor County. The Rutledge defendants answered and filed a third party action against Jerry Sadler, Commissioner of the General Land Office, for damages. The court entered an order severing in one cause those issues sought to be presented regarding the validity of (1) the Standard Oil and Gas Lease to Trace Mining Company dated February 24, 1964, (2) agreement between B. L. Standard and the Rutledges and (3)

the amended Standard Oil and Gas Lease, and all issues relating to the cancellation or termination of the agency rights under the Relinquishment Act. The other cause to consist of all the remaining issues in the case. The cause relative to the validity of the instruments and the issues relating to the cancellation of the agency rights under the Relinquishment Act is the case that was tried and is now being considered on appeal.

The court granted the Standard group's motion for a summary judgment and denied the motion for summary judgment filed by the State and Sadler. Humble is not a party to this cause, but remained in the case on the remaining issues. The State and Sadler have appealed.

They contend that the court erred in granting the Standard group's motion and in overruling their motion for summary judgment. The tract of land was acquired by the State as escheated lands under Article 3281, Vernon's Ann.Civ.St. Leo Standard and wife acquired the surface of the land by patent from the State in 1939, with reservation of the minerals to the Permanent Free School Fund. Leo Standard and wife conveyed the surface estate of said land to B. L. Standard and wife in 1946. The School Land Board advertised the minerals for lease under Article 5421c-3, V.A.C.S. Humble became the purchaser and secured a lease on November 5, 1963. Thereafter, Standard executed a lease on the land to Trace Mining Company. Sadler refused to file the Trace lease. The Standard group secured a writ of mandamus from the Supreme Court in Standard v. Sadler, 383 S.W.2d 391, directing the Commissioner of the General Land Office to recognize the Standard-Trace lease as a valid lease and ordered him to file a certified copy thereof as required by law. Motion for rehearing was overruled and the State filed a motion to stay issuance of the writ of mandamus. The instruments sought to be declared invalid herein were before the Supreme Court on that motion. The motion to stay was overruled on January 20,

1965. On January 28, 1965, the writ of mandamus was served on Sadler and he filed the original and amended lease and the employment contract that the Rutledges had with Standard. In the mandamus suit the Supreme Court said:

"What we hold is that Art. 3281 confers no power on the Commissioner to execute leases for oil and gas and other mineral development on escheated land which has been sold by the State from the Permanent Free School Fund. And we hold further that when the full fee title to escheated land is owned by the Fund and the land is sold with a reservation of all minerals, the Relinquishment Act of 1919 constitutes the owner of the soil the agent of the State for the purpose of negotiating and executing oil and gas leases thereon. We assume the Commissioner of the General Land Office will recognize the lease executed by Standard as a valid lease and that he will receive and file the certified copy thereof as required by law. Writ of mandamus will issue only if he refuses to do so."

The amended Standard lease is in the identical language of the original lease except for the addition of Paragraph 27 which is as follows:

"This lease agreement is executed in amendment of and substitution for an oil and gas lease dated February 24, 1964, by and between the same parties, identical in provisions to those stated hereinabove, recorded Volume 735, page 7 of the Deed Records of Taylor County, Texas, and covering the same land described above, solely in order to show that said lease was executed contemporaneously with and pursuant to an employment contract between B. L. Standard, the landowner, and Rutledge and Rutledge, attorneys at law, dated February 14, 1964, expressly referred to herein and made a part hereof for all proper purposes."

The Supreme Court has decided that the Standard-Trace Mining Company lease is valid. The same parties are involved in both proceedings. In Swilley v. McCain, 374 S.W.2d 871 (Tex.1964), the court said:

"After a question of law or an issue of fact has been litigated and adjudicated in a court of competent jurisdiction, the same matter cannot be relitigated in a subsequent suit between the same parties or those in privity with them. This is by virtue of the doctrine of res judicata, which thus extends to both questions of law and issues of fact but binds only the parties to the first suit and those who claim under them. It may not be invoked by one who is not bound by the judgment in the earlier proceeding."

"As originally conceived and as generally applied, the doctrine of stare decisis governs only the determination of questions of law and its observance does not depend upon identity of parties. After a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties."

Also in Ogletree v. Crates, 363 S.W.2d 431 (Tex.1963), the Supreme Court said:

"The rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former trial, as well as those which were actually tried."

In its prayer the State, in effect, asks this court to overrule the Supreme Court and declare that the lands involved herein "shall be subject to lease under the provisions of Article 5421c–3."

We have concluded that under the doctrine of res judicata and stare decisis the Standard lease and the amended Standard lease are valid.

The School Land Board had leased Standard's land to Humble under Article 5421c–3, V.A.C.S. Standard contended that he was entitled to lease the land under the Relinquishment Act. The Land Board's lease constituted a cloud on his title and he was in need of the services of an attorney to remove such cloud. After being turned down by several attorneys, he was finally successful in securing the services of the law firm of Rutledge and Rutledge. Trace Mining Company is a partnership composed of the three Rutledges in the law firm. The employment contract provided that the attorneys had an option to acquire an oil and gas lease on the Standard land for a cash bonus of $10.00 per acre. It further provided that the portion of the lease bonus payable to Standard as the land owner should be returned to the lawyers as part payment for their legal services. It further provided that if Trace Mining Company should develop the lease by drilling, Standard would have an option to acquire a share in the working interest. It further provided that if Trace produced oil from the land and had the management of the property, Standard would have an option on the job of pumper and would receive $500.00 per location as damages.

Article 5367 is as follows:

"The State hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds. Acts 2nd C.S.1919, p. 249; Acts 1st C.S.1921, p. 112."

Standard was entitled to one-half of the bonus for leasing the land as the agent for the State. He used his part of the bonus to employ a firm of lawyers to represent him. In Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769 (1932), at page 773 the court said:

"That when a valid and binding lease or conveyance of the minerals is made by the owner of the land, as the agent of the state, then in that event he receives the foregoing amounts as compensation for his services. His share of the rentals, royalties, and bonuses derived from the leases executed by him become property rights during the period of time for which the lease runs."

"The rule is well established that it is not the policy of the law of this state to favor restraints upon alienation of property. The courts of this state have established the rule that rents or royalties payable under oil and gas mineral leases are severable and separable from the ownership of the surface estate and are property rights, and, having established this rule with respect to such property, we think, under the policy of the law of this state, that they are assignable by the owner thereof."

Standard had an option to acquire a portion of the working interest under certain conditions. These conditions are not now present and Standard has not exercised his option. He also has an option to secure a job on the lease as a pumper under certain conditions which have not come into existence. Also the conditions under which Standard would receive as damages $500.00 per location are not in existence. If these conditions arise and the State has any interest in them, it could assert them at that time.

We have considered appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.