**McDONALD v. DEES et al. (No. 2280.)**

Court of Civil Appeals of Texas. El Paso. March 14, 1929.

W. B. Silliman, of Ft. Stockton, for appellant.

J. A. Moore, of Big Lake, for appellees.

PELPHREY, C. J. The statement of the case appearing in appellant's brief, having been agreed to by appellees and appearing to be substantially correct, will be by us adopted.

The lands in controversy in this suit are what are known as public school lands, and in 1912 were sold and awarded by the commissioner of the general land office of the state of Texas to Willie Graef, one of the appellees herein, and prior to and at the time Willie Graef made his application to purchase these lands from the state, and prior to and at the time they were sold and awarded to him by the commissioner of the general land office, were duly appraised and classified as mineral lands and duly offered for sale as such by the commissioner of the general land office. The application of the said Willie Graef for the purchase of said lands expressly recited, among other things, "If it is classed as mineral lands, the sale to me is upon the express condition that the minerals herein shall be and are reserved to the fund to which the land belongs, to all of which I agree," and, on such applications the lands in controversy were so sold and awarded to Willie Graef by the commissioner of the general land office in 1912.

And in the year 1920 Willie Graef and wife conveyed the lands in controversy to Frank Dees by deed and undertook to reserve a portion of the minerals to themselves by the following clause inserted in the deed: "It is stipulated and agreed that the grantors herein reserve unto themselves and their heirs and assigns the one-sixteenth part of all oil that may be now or hereafter produced from said lands, also one-half of the lease money the grantee herein may receive for oil or gas lease on the land above described."

And still later, in 1922, Frank Dees and wife by two separate deeds, conveyed the land in controversy to J. E. Minear, and in said deed undertook to reserve to grantors all minerals by a clause in said deed which reads as follows: "This deed of conveyance, however, is made with the express reservation of any and all minerals, including oil and gas, and the right of ingress and egress for the purpose of mining and producing the same, and marketing the same, and such minerals and all minerals are not hereby conveyed but are expressly reserved to the grantors herein to the extent of his ownership therein as owner of said lands."

And still later, in 1924, J. E. Minear and wife, conveyed the lands in controversy to J. A. McDonald, appellant, by a general warranty deed.

Appellees, Willie Graef and Frank Dees, brought this suit, asserting title to the oil and gas, and other minerals in, on, and under the lands in controversy, admitting title and ownership of the surface in appellant, and asking for the appointment of a receiver and the continuation of a receivership for the purpose of making oil and gas leases on the lands. Defendant, in his answer and cross-action, alleged his ownership of said lands, including all rights to the oil and gas in, on, and under said lands, to which appellant, as owner of the soil, might be entitled under Rev. St. art. 5367 et seq., constituting what is known as the "Relinquishment Act."

In chambers, prior to the term of court at which this case was tried, the district court appointed a receiver to take possession of the lands in controversy, and instructed the receiver to lease said lands and do "such other

and further acts as may be necessary and incidental to the ownership and production and development of any oil and gas that may be in and under said lands," and giving said receiver the exclusive control of said lands against plaintiffs and defendants concerning the minerals, the oil and gas, in and under said lands. From this judgment in chambers, appointing a receiver, defendant J. A. McDonald, now appellant, gave notice of appeal, but did not perfect his appeal.

When this case came up for trial on its merits in district court, Glenn Myers, the only other defendant in said cause besides appellant, filed a disclaimer. The case then proceeded to trial before the court, neither party having demanded a jury, and resulted in a judgment in favor of plaintiffs in said cause, appellees herein, and against defendant in said cause, appellant herein, and the court decreed that appellees have and recover of and from appellant "all the right, title, and interest which the surface owner may have or be entitled to acquire in and to, all and singular, the minerals, including oil and gas, in and under and that may be produced from" the lands in controversy, and providing that writ of restitution and possession may issue, and said final judgment further decreed a confirmation of the order and appointment of the receiver, and further decreed that J. A. McDonald, defendant in said cause, now appellant, take nothing by his cross-action against plaintiffs, now appellees.

Upon the court overruling defendant's motion for a new trial, he has appealed to this court.

### Opinion.

Appellant in his brief presents six assignments of error, with eight propositions thereunder. The first four assignments question the correctness of the judgment rendered, because the petition affirmatively shows that the attempted reservation in plaintiff's deeds were not on the terms and conditions fixed by law, that the petition affirmatively shows that the title to the mineral sued for is in the state of Texas, that at the time when such minerals were sought to be reserved by plaintiffs the title was outstanding in the state of Texas, and that neither plaintiffs nor defendants have any title thereto.

Assignments 5 and 6 complain of that part of the judgment appointing a receiver, on the theory that the receivership was the main object of the suit, that the petition affirmatively shows that there was no partnership interest between plaintiffs and defendant, and that plaintiffs and defendant do not claim any joint and undivided interest in the lands in controversy. In accordance with the view we take of the case, the only question which need be decided is whether there vested in appellees any interest in the minerals in and under the land in question which was subject to being reserved by them in case of sale.

We are of the opinion that this question was settled by our Supreme Court in the case of Greene v. Robison, 8 S.W.(2d) 655. In that case the constitutionality of the Relinquishment Act was vigorously attacked, on the theory that it constituted an unauthorized diversion of a part of the school fund, and as delegating to an agent duties imposed by the Constitution upon the Legislature. In discussing the question of a diversion the court had the following to say:

"We concur with the view expressed by Mr. Black, the able attorney for relator, that the act does not authorize or effect a sale to the owner of the soil, but that 'the intention of the Legislature was to utilize the co-operation and services of the surface owner in the sale of the reserved mineral estate to use him as an intermediary in the sale.' The purpose of the act was disclosed in section 1 of the original act of 1919 (Acts 2d Called Sess. 1919, c. 81), as follows: 'To promote the active co-operation of the owner of the soil and to facilitate the development of its oil and gas resources.' We think the act, as it says in article 5367, creates the owner of the soil the state's agent for the purposes mentioned therein. For the accomplishment of those purposes, said agent is authorized, 'to sell or lease * * * the oil and gas * * * upon such terms and conditions, as such owner may deem best, subject only to the provisions' of the act. *There is no vesting of title or interest in the oil and gas in the owner of the soil. No rights pass to any one until a sale or lease is effected according to the terms of the act.*" (Italics ours.)

In the same opinion the court, in discussing the question of remuneration to the owner of the soil for the damage arising from the prospecting for and development of oil on the land, says:

"The act provides that the purchaser of the oil and gas shall pay to the owner of the soil, 'like amounts' that he shall pay to the state; and construing this provision in connection with the provision of article 5379, that such payments shall be 'in lieu of all damages to the soil,' and having in mind some of the provisions of the original Mineral Sales Act passed in 1913, it was evidently the intention of the Legislature that such amounts as provided to be paid to the owner of the soil were not intended or considered to be a part of the consideration for the sale of the oil and gas. This was a legislative provision for the protection and benefit of the owner of the soil, and such amounts were to be paid by said lessee or purchaser of the oil and gas out of his purchase."

Further along in the same opinion, we find this language:

"Therefore the very first words of this Mineral Act of 1919 disclosed that one of the purposes of the act was 'to promote the active co-operation of the owner of the soil.' This

calls attention to the conditions that made it desirable to secure the co-operation of the owner of the soil. The state had sold the land, the soil with all that goes with it, to the purchaser thereof, and was under obligation to protect him in the use and enjoyment of what it had sold him; and this the state had failed to do. There was a dual or double ownership of the land, the surface estate and the mineral estate, each antagonistic to and conflicting with the other. There was no provision of law for the protection of the owner of the soil in his peaceable enjoyment and possession of his property. The development of an oil field on it would be disastrous to him and utterly destructive of his property. Therefore, the attitude of owners of the school and asylum lands throughout the state was practically one of armed resistance. The conditions were inimical to any effort at development, and the state was not realizing on its mineral estate in these lands. The purpose of the act was to meet this practical situation. Indeed, the rights of possession and user of the land as a whole by both the owner of the soil and the owner of the minerals, they being joint owners of the land, are mutual and blended. As in other joint ownerships, necessarily there must be co-operation. If the joint owners do not co-operate, confusion is bound to arise, the purposes and efforts of each are jeopardized and destroyed, and the state suffers loss, not only to its mineral estate, but likewise as a sovereign in the administration of justice. The Legislature has brought about this desired result in a lawful manner by requiring the purchaser of the oil and gas to compensate the owner of the soil for the use he makes of the surface, independent of the price he pays for the minerals. He compensates said owner for the inevitable damages of oil exploration and operation. *The landowner acquires no estate in the oil and gas. He simply has a right to receive the compensation from the lessee out of the lessee's production as the statute provides.* [Italics ours.] The payments to be made to the owner of the surface 'in lieu of all damages to the soil' is a matter of interest primarily to the landowner and the oil operator. It is the oil operator who injures or destroys the owner's land. But the state is also interested as a sovereign doing justice between its citizens and also as the vendor to the landowner."

We think it clear from the above discussion that the right to act as agent provided for in the act was peculiar to the owner of the soil at the time of a lease or sale, and that a prior owner of the land would have no rights in the matter after the title to the surface had passed out of his hands. As said by the Supreme Court, one of the purposes of the act was to bring about co-operation, and who will say that an owner of the soil will lend his co-operation to the exploration for and development of oil on his lands, when the right to lease or sell the minerals and receive compensation, therefor has been reserved by his predecessor in title.

The owner of the soil is constituted the agent of the state by the statute, not the original purchaser, and we think it clear that the Legislature had in mind the owner at the time of a lease or sale and no other; for the statutes go further to provide, as said by the court above, how the owner shall be compensated for damage to the soil. The question in the case above referred to was not the question we now have before us, but the effect of that holding, in so far as it holds that there was no sale of the minerals to the surface owner, and the reasons advanced by the court for so holding, should govern here.

To give effect to the contention of appellees would be to nullify the primary purpose of the Relinquishment Act. It is our opinion that the owner of the soil was the agent of the state for the purpose of selling the minerals for it only so long as he retained the title and that the right to act as agent in such matters, together with the right to receive compensation for the damages arising from exploration or development of minerals on the land, passed upon a sale by him, to the purchaser of the surface. If we are correct in this, then the original purchaser or any subsequent vendors of the land had no rights in the minerals which were capable of being reserved, and the trial court erred in rendering judgment in favor of appellees. It naturally follows that no receiver should have been appointed.

The judgment of the trial court is therefore reversed, and the cause remanded, to be disposed of by the trial court in accordance with this opinion.