GALVESTON, H. & S. A. RY. CO. et al. v.
STANDARD RICE CO., Inc.

No. 2035.

Court of Civil Appeals of Texas. Beaumont.

Dec. 17, 1930.

Rehearing Denied Jan. 7, 1931.

Jno. T. Garrison, Arterbury & Coolidge; and Baker, Botts, Parker & Garwood, all of Houston, for appellants.

B. F. Louis and Murray G. Smyth, both of Houston, for appellee.

WALKER, J.

This was a suit by appellee against appellant for damages to an interstate shipment of rice originating in the city of New York and delivered in the city of Houston, Tex. Appellee pleaded that the rice was delivered to appellant in the city of New York in good condition and received from appellant in the city of Houston in bad condition; and upon delivery, after inspection by both appellee and appellant, the damaged rice was remilled under instructions from appellant. The prayer was for $1,547.60, the amount of damage to the rice, and the cost of remilling in the sum of $51.75, with interest from the date the damage accrued.

Appellant answered by general demurrer and a special plea to the effect that, if the rice arrived in Houston in a damaged condition, the damage "was proximately caused by the weakened, frail and loosened condition" of the containers in which it was shipped.

The case was submitted to the jury on the following special issue:

"What was the difference in the market value of plaintiff's damaged rice if it had arrived in Houston in good condition, and its market value after it had been reconditioned?"

To this question the jury returned the following answer:

"We, the Jury, answer the special issues submitted to us by the court as follows:

"No. 1. Plaintiff to receive damages to the amount of $1407.01, which was the difference in market value of rice if it had arrived in Houston in good. condition, and its market value after it had been reconditioned.

"W. F. Clancy, Foreman."

Judgment was entered in appellee's favor for the damages assessed by the jury and for "the further sum of Fifty One and 75/100 Dollars ($51.75) to cover the amount sued for for reconditioning the damaged rice, a total of Fourteen Hundred Fifty-Eight and 76/100 ($1458.76), with interest thereon from September 10, 1925, at the rate of Six Per cent (6%) per annum."

### Opinion.

Appellant excepted to the court's charge because it failed to submit to the jury the issue of its negligence in handling the rice and the issue of the proximate cause of the damage to

the rice. Under these exceptions the propositions are, first, that the verdict does not support the judgment because there was no finding by the jury either that the shipment was in good condition at New York on delivery to the defendant or that the defendant negligently handled the shipment; and, appellee having failed to request their submission to the jury, they were waived.

■■ This proposition is not a sound construction of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, cited by appellant in support thereof. Where a case is submitted to the jury on special issues, it is conclusively presumed on appeal that the trial court found all supplementary facts necessary to support the judgment on the theory of the issues submitted. But, as held in the Ormsby Case, no presumption arises to support the judgment on an independent issue, constituting a complete, independent ground of recovery or defense.

Appellant's second proposition against the judgment is that the condition of the goods when delivered for shipment was a disputed fact, and it was therefore error to overrule its exceptions to the charge calling for the submission of this issue to the jury. This proposition does not constitute error because, as we construe the evidence, it appeared as a matter of law that the rice was delivered to appellant in good condition. Its freight checker in New York, Peter Cavanaugh, testified as follows:

"My name is Peter Cavanaugh. I am forty-five years old, and I work as a freight checker. In August and September, 1925, I was working for the Southern Pacific Company as a freight checker. I had something to do with the shipment of rice alleged to have contained seven hundred and fifty cases of sixty one pound pages, and seven hundred and fifty cases of thirty-six twelve ounce packages of White House Rice, which shipment is alleged to have been made via the Morgan Lines on or about August 29th, 1925, by the Standard Rice Company of New York, to the Standard Rice Company, Inc., of Houston, Texas. The shipment was delivered to the Southern Pacific Company while I was stationed as freight checker and it was my duty to take note of the shipment and to receipt therefor. I also signed the bill of lading for the shipment on behalf of John Hawes, the agent of the Southern Pacific Company, as this was part of my duty on receiving the shipment for the Morgan Line. By reference to my records I find that I signed for this shipment for the Southern Pacific Company.' As to the condition of the cases in this shipment at the time it was received by me on the pier, I find by reference to the shipping order or bill of lading that I found twenty-six cases to be in frail condition, so that it became necessary to recooper them. The bill of lading contains an exception to this effect on the original billing. This is in my handwriting. By reference to the Steamship Company's waybill I find that the same exception was carried on such waybill. I was present when the shipment was loaded from the pier to the boat. The shipment was loaded onto the steamer El Oriente. In the loading the shipment the cases were put on hand trucks and the cartons were put on drays. When the shipment was loaded on the boat it was stowed in No. 3 upper between deck, forward aft No. 3 hatch. The cases nor cartons were damaged in any way during the process of loading and stowing."

"I just made a surface inspection on the outside of the cases of rice at the time it was delivered at the pier by the Standard Rice Company, which of course was sufficient to enable me to find out that twenty-six of the cases were in frail condition and needed recoopering. I, of course, did not examine the contents of the cases. I have stated before that I made a surface inspection of all of the cases, which I have to do to find out whether they are in proper condition to stand shipment. As near as I can recollect this shipment came to us in four auto trucks, and it takes about one hour to unload each truck, so it took me about four hours to inspect this particular movement. The method which I used in making the inspection of this shipment was as follows: The truckman hands down the cases from the end of the truck and our unloaders then place them at a convenient place on the pier. However, my inspection is made as each case is taken off the truck by the unloaders. I have already stated that there were twenty-six cases in frail condition, which had to be recoopered. I did not personally inspect each of the containers as it was being loaded on the boat. I was present as they were trucked on to the ship, but my inspection was made as each case was taken off the truck. I have already answered the question as to how long it took me to inspect this shipment; I said that it took me about four hours to make the inspection. The shipment was trucked into the ship from the dock in about one and a half hours, as they used a good many more men. In fact we use thirty men to a gang in the trucking operation from the dock to the ship. I have already described how I made my inspection of this shipment."

"I did not examine each container of rice after it was loaded on the boat. I did not make any inspection of the rice after it was loaded on the ship. I cannot answer as to how the rice was stowed in the boat. I cannot state what kind of freight surrounded the rice stored in the boat."

"As to whether the Southern Pacific Company customarily accepts for shipment and ships freight known at the time to be packed in frail or bad shipping condition, we are compelled to accept all shipments that are offered to us, and when they are packed in bad or

frail shipping condition showing a small percentage of poor condition we ourselves attend to the recoopering, as we did in this case. The Southern Pacific Company employs recooperers for this purpose. None of the cases of rice were dropped or otherwise subjected to a fall or blow at any time during the process of loading on board the ship. If such a thing had occurred my record would have shown it. I have already answered the question as to whether or not I or the Southern Pacific Company would have accepted this rice for shipment to Houston if the containers had been in a frail or bad shipping condition when delivered to the pier. If any of the containers of rice involved in this shipment had been in a frail, bad or damaged condition at the time of shipment I would have observed them, and would have done as I did in this case. As a matter of fact twenty-six cases were in a frail condition and we had to recooper them."

"I have heretofore stated that I was present at the time each and every case of this rice was loaded on board the ship. It is part of my work to be present when shipments that are checked by me are loaded into our ships. I saw every single case of rice as it was loaded on board the ship. I was employed at that time at Pier 48, North River. My duties did not require me to supervise or have anything to do with shipments from any other dock than Pier 48, North River."

·"There is a notation on this bill of lading reading '26 cases in frail condition recoopered'; this notation was written by me."

Appellee showed by the testimony of its associate manager in New York, J. Wyndelts, who had charge of this rice before it was shipped, that it was kept in its warehouse in New York in good condition and was loaded out on autotrucks in good condition for delivery to appellant. On the condition of the rice and its containers this witness testified:

"From my familiarity with the stock of rice in the warehouse I know the condition of this particular shipment of rice at the time it left the warehouse. This shipment left the warehouse in good condition. If any of the cases had had loose or broken boards at the time of loading out of the warehouse, or had shown other damaged condition, they would not have been permitted to go out."

■ There is no evidence as to the handling of the rice from appellee's warehouse in New York to appellant's wharves in New York, nor as to how the rice was stacked in the ship nor as to how it was cared for, nor as to how it was handled in transportation while on the ship. That a large part of it was damaged when it arrived in Houston was shown without controversy. It was further shown that the damage to the rice was caused by the crushing, mashing, and bursting of the containers; as a result, the damaged rice was mixed with dust, dirt, paper, etc., and some of the grains of rice were broken. On the testimony quoted, all the containers of the rice in question were received by appellant in New York in good condition, except the twenty-six cases noted on the bill of lading, and these were repaired by appellant before the rice was damaged. While there was no direct proof of negligence, appellant advances the proposition convicting it of negligence on the facts stated. Citing Davis v. Clement Grain Co. (Tex. Civ. App.) 251 S. W. 545, it correctly states the law to be that a plaintiff in an action against a carrier for damages to a shipment of goods may establish negligence "by showing that the goods were delivered at the point of origin in good condition and arrived at destination in bad condition." Under this proposition, the fact issues suggested by appellant's exceptions to the charge of the court appeared as a matter of law.

■ Appellee had the right to recover the reasonable and necessary expense incurred in reconditioning the damaged rice. Panhandle & S. F. Ry. Co. v. Shell (Tex. Civ. App.) 265 S. W. 758, 759. Where the necessity for this expense and its reasonableness do not appear as legal conclusions from the undisputed evidence, they must be submitted as fact issues to the jury. In this case, there was a sharp issue as to the extent of the damage suffered by appellee, that is, as to the amount of damaged rice. Recovery for this item of expense was a distinct issue from the one submitted to the jury; therefore, having failed to request its submission, appellee waived all claim for the expense incurred in reconditioning the rice. Ormsby v. Ratcliffe, supra.

■■ The court did not err in awarding interest on the jury's verdict. The amount found by the jury did not include interest, but only fixed the damages as of the date of the injury. Appellee's petition stated facts entitling it, as a matter of law, to interest, and on these facts prayed for damages in the sum of $1,599.35, "together with interest from September 11, 1925." Since the facts sustained the allegations of the petition, interest followed as a matter of law. Settegast v. Timmins (Tex. Civ. App.) 6 S.W.(2d) 425; Ewing v. Foley, 115 Tex. 222, 280 S. W. 499, 44 A. L. R. 627; Humble Oil & Refining Co. v. Kishi (Tex. Civ. App.) 299 S. W. 687, 691.

It follows that the judgment of the lower court awarding appellee damages in the sum of $51.75 for reconditioning the damaged rice must be reversed and judgment on this issue rendered in favor of appellant. In all other respects, the judgment of the lower court is affirmed.

Reformed and affirmed.