**PERMIAN OIL CO.** *et al. v.* **STATE.**

No. 9250.

Court of Civil Appeals of Texas. Austin.
April 15, 1942.

Rehearing Denied May 6, 1942.

Carl P. Springer, of Abilene, J. B. Dibrell, Jr., of Coleman, and John Sayles, of Abilene, for appellants.

Gerald C. Mann, Atty. Gen., Glenn R. Lewis, Asst. Atty. Gen., R. E. Kepke, of Houston, and Peter Maniscalco, Asst. Atty. Gen., for appellee.

BLAIR, Justice.

This appeal is from the orders overruling the pleas of privilege of J. W. Quinn and J. B. Dibrell, Jr., to be sued in Coleman County, their domicile; and of C. W. Hoffman and Daisy D. Page to be sued in Eastland County, their domicile; and also from the orders overruling the pleas of privilege of Daisy D. Page as executrix and trustee of the estate of K. F. Page, deceased, and of the said Quinn, Dibrell and Hoffman as the statutory agents and trustees of Permian Oil Company, a dissolved Texas corporation, to be sued either in Coleman or Eastland County.

The State sued upon a written instrument, executed by J. W. Quinn, C. W. Hoffman and K. F. Page to the Pure Oil Company, dated February 15, 1928, which, omitting formal and immaterial parts, reads:

"Whereas, on the 9th day of February, 1928, Leona A. Hickox, a feme sole, individually and as devisee and independent executrix of the estate and will of Thomas Fenton Hickox, deceased, executed and delivered a special warranty deed bearing said date conveying to J. W. Quinn, C. W. Hoffman, of Coleman County, Texas, and K. F. Page of Eastland County, Texas, all that certain Section No. 104, Block No. 194 TCRyCo., original grantee, situated in Pecos County, Texas, (metes and bounds description).

"Now, Therefore, we J. W. Quinn and C. W. Hoffman, of Coleman County, Texas, and K. F. Page of Eastland County, Texas, for and in consideration of the sum of $6,000.00 cash to us in hand paid by the Pure Oil Company an Ohio Corporation, receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said The Pure Oil Company an Ohio Corporation all the right, title and interest which we acquired under and by virtue of said conveyance, in and to 7/8ths of the oil and gas in, on and under and upon the north 7/8ths of the said section No. 104, Block 194, T.C.Ry.Co., original grantee, situated in Pecos County, Texas, being all of said survey save and except 50-7/8 acres off the South side thereof cut off by running a line from the East boundary line to the West boundary line of said Survey parallel with and at such a distance from the South boundary line of said survey as to include 50-7/8 acres.

"To Have And To Hold, all such rights, titles and interests in said lands and premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said The Pure Oil Company an Ohio Corporation its successors and assigns forever.

"And we do hereby bind ourselves, and our heirs, executors and administrators to warrant and forever defend, all and singular the said rights, titles, and interest herein conveyed unto the said The Pure Oil Company, an Ohio Corporation its successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under us, but no further.

"It is expressly understood and agreed that the 1/8th of the Oil and Gas reserved and excepted in the foregoing conveyance is to be considered as royalty and that the grantee The Pure Oil Company an Ohio Corporation, its successors and assigns, shall have full right to operate on said North 7/8ths of the said survey 104, Block 194, TC Ry Co original Grantee in Pecos County, Texas, for the discovery, production and marketing of the oil and gas herein conveyed."

The trial court construed the instrument as being in effect an oil and gas lease by the owners of the surface as the agents of the State, executed under the provisions of the Relinquishment Act, and the first point presented by appellants is that the court erred in so construing the instrument.

■■ When considered in the light of the provisions of the Relinquishment Act (Arts. 5367, 5368, 5381), the instrument must be construed as being in effect an oil and gas lease by the owners of the surface and as agents of the State, and subject to the terms of the act. By the instrument the parties who executed it declared that they own "all that certain Section No. 104, Block No. 194 TCRY Co. original grantee, situated in Pecos County, Texas," under a special warranty deed duly recorded; that they grant, sell and convey the oil and gas in the north 7/8ths of the land to Pure Oil Company by virtue of the title acquired thereto under said special warranty deed, in consideration of $6,000 paid in cash, and "1/8 of the oil and gas reserved and excepted * * * to be considered as royalty," and they gave to grantee the "full right to operate * * * for the discovery, production and marketing of the oil and gas herein conveyed." The original grant specifically reserved to the State all of the minerals in this land, which under the Relinquishment Act meant that the oil and gas did not vest in the owner of the soil as his property, and that under any subsequent conveyance "all minerals not disposed of go with the title of the land, subject to the provisions of the act." Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769, 773; Greene v. Robison, 117 Tex. 516, 533, 8 S.W.2d 655. In the Lemar-Garner case, the court also held that "prior to the making of the mineral lease, the owner of the land has no right to assign or convey any mineral rights in the property." Under these decisions the minerals so reserved to the State may be leased, sold, assigned, or conveyed only in two ways: (1) by a lease or sale of the minerals by the owner of the surface as agent of the State under the Relinquishment Act; and (2) by assignment or conveyance of the min-

erals after they have been first leased or sold by the owner of the surface as agent of the State.

■■■ Appellants concede that they did not acquire any title to the oil and gas by virtue of the conveyance of the title to the land to them under the special warranty deed. The instrument does not purport to assign or convey any right or interest in the oil and gas, which had been acquired through any lease or sale of the minerals by any prior owner acting as agent for the State under the Relinquishment Act. Clearly the instrument was intended to operate as an oil and gas lease of the lands by the parties who declared in the instrument that they were the owners of the surface and they necessarily executed it as agents of the State. If this were not so, the instrument would have no meaning. It is true that the instrument does not specifically recite that the parties executed it as agents of the State and for the purpose of leasing or selling the minerals reserved to the State under the original grant; but its terms and provisions are broad enough to and do constitute a compliance with the provisions of the Relinquishment Act, which provides that the owner of the surface may as the agent of the State lease or sell the minerals reserved to the State upon such terms as he may deem best. Manifestly an owner of the surface could not by failure to recite in his instrument leasing or selling the minerals that he was executing same as owner of the surface and as agent of the State, deprive the State of its minerals. Where an owner of the surface undertakes to lease or sell the reserved minerals it will be presumed that he acted as the agent of the State under the Relinquishment Act. To hold otherwise would render the title of the State to the reserved minerals wholly insecure.

■■■ The second point presented by appellants is that the trial court held without any proof that Quinn, Hoffman and Page were the owners of the surface estate to the lands involved. The State introduced in evidence the duly acknowledged and recorded instrument conveying an oil and gas interest to the Pure Oil Company, wherein said parties declared under oath that they were the owners of the surface; and having shown by the original grant that the minerals were reserved to the State, it will be presumed that they executed the instrument conveying the oil and gas as agents of the State under the Relinquishment Act, in absence of any showing to the contrary.

■■■ The third and remaining point presented by appellants is that the court erred in holding that by the execution of the instrument sued upon Quinn, Hoffman and Page obligated themselves in writing to pay to the State at Austin, in Travis County, one-half of the $6,000 bonus paid to them by the Pure Oil Company for the oil and gas interest in the lands involved. The State offered in evidence the original grant which reserved the minerals to the State; the instrument sued upon, which is in effect an oil and gas lease by the owners of the surface as agents of the State under the Relinquishment Act, which act provides that as compensation for their co-operation as owners of the surface of the lands, and services in making the lease, they were entitled to receive one-half of the bonus, deferred rentals and royalties, the other half being due to the State and payable directly to it at Austin. The law is settled that these statutes are read into and made a part of the lease contract, and that together they constitute an obligation in writing on the part of both the lessor and the lessee to pay one-half of the bonus and other consideration to the State at Austin, in Travis County; that the obligation is the joint and several obligation of the lessor and lessee; and that the venue of a suit thereon or by reason thereof is maintainable in Travis County against either or both the lessor or lessee under Sub. 5 of Art. 1995, Vernon's Ann.Civ.St. Empire Gas & Fuel Co. v. State, Tex.Civ.App., 21 S.W.2d 376, affirmed by Supreme Court, 121 Tex. 138, 47 S.W.2d 265; Shell Pet. Corp. v. Tippett, Tex.Civ.App., 103 S.W.2d 448.

The judgment of the trial court is affirmed.

Affirmed.