**THE TEXAS CO. et al.**

**v.**

**STATE.**

No. 12585.

Court of Civil Appeals of Texas.

San Antonio.

March 10, 1954.

Rehearing Denied April 28, 1954.

Wm. E. Loose, Houston, Black & Stayton, Austin, for appellant, The Texas Co.

Joseph W. Moore, Houston, E. G. Lloyd, Jr., Jacob S. Floyd, Alice, for appellant, Duval County Ranch Co.

John Ben Shepperd, Atty. Gen., Phillip Robinson, Asst. Atty. Gen., John Peace and Charles D. Mathews, Sp. Assts. Atty. Gen., for appellee.

POPE, Justice.

This case concerns the validity of an instrument executed by a surface owner, as tested against the owner's agency powers under the Relinquishment Act. Acts 36th Leg. 2d C.S., Ch. 81, pp. 249–254, Vernon's Ann.Civ.St. art. 5367 et seq.

The State of Texas instituted this suit against The Texas Company and the Duval Ranch Company, and asked for title to and possession of the minerals in four thousand acres of land, for the cancellation of a mineral deed given by Duval Ranch Company

(hereinafter called Duval) to The Texas Company, and for the recovery of the value of all oil that has been produced from those lands. There has been production on the land since 1937, and $^{14}/_{16}$ of the production has gone to The Texas Company, $^{1}/_{16}$ to the State of Texas, and $^{1}/_{16}$ to Duval, the surface owner. The central issue is whether Duval, as surface owner of the lands, gave an oil and gas lease as authorized by the Relinquishment Act, or whether it gave a deed absolute to the minerals, in violation of the Relinquishment Act. The trial court, without the intervention of a jury, upheld the State's claim that the instrument was a mineral deed and void, but the court awarded Duval a $^{1}/_{16}$ past and future interest in the production on the lands as damages to the surface. The State recovered judgment against The Texas Company in the sum of $666,687.75. We affirm that part of the judgment, but hold further that the State should have been awarded interest before judgment in the sum of $278,073.48, for the detention of the State's money. We also hold that the State owns the full $^{18}/_{16}$ of the oil and gas estate. The Texas Company was given judgment against Duval on its warranty in the sum of $9,940, which we affirm.

In 1922, Duval executed an instrument to R. E. Breeding, which sought to convey all of the oil, gas, and other minerals under 16,000 acres of land, 12,000 acres of which were privately owned in fee by Duval and 4,000 acres of which were minerally classified lands belonging to the Public Free School Fund. Within two days Breeding by a like instrument, conveyed the property to The Texas Company. This case concerns only the 4,000 acres of minerally classified land.

We shall set forth the first instrument in full, omitting the land descriptions:

The State of Texas,
County of Harris,

Know All Men By These Presents:

That the Duval County Ranch Company, a private corporation duly incorporated under the laws of the State of Texas, with its principal office in Houston, Harris County, Texas, acting herein for itself and as agent and representative of the State of Texas, as provided in Article 5904o–16 et seq., of the Complete Texas Statutes of 1920, acting herein by and through its Vice President, Robert E. Goree, hereinafter called Grantor, for and in consideration of the sum of Twenty-eight Thousand and No/100 ($28,000) Dollars cash in hand paid by R. E. Breeding, receipt of which is hereby acknowledged, hereby Grants, Bargains, Sells and Conveys, and by these presents does Grant, Sell, Bargain and Convey unto the said R. E. Breeding, hereinafter called Grantee, all the oil, gas and other mineral (whether similar or dissimilar) in and under the following described tracts of land, situated in the Counties of Webb and Duval in the State of Texas, described as follows, to-wit:

The following tracts are included in this instrument: (Here follows description of the one hundred tracts of land.)

And the Grantee shall have the exclusive right to prospect, drill and mine on said land and remove said products therefrom; to erect and maintain thereon and remove therefrom all necessary or proper structures and equipment, including the right to pull the casing from wells; and to install and maintain thereon and remove therefrom all tanks and other means of storage and all pipes and other means of transportation; also the right of ingress and egress at all times for any of said purposes.

In the event the Grantee shall produce oil or gas or any other minerals from said tracts of land in paying quantities, then there shall be paid to Grantor, its successors and assigns, a royalty of one-eighth ($^{1}/_{8}$) of all the oil, gas and other minerals so produced and saved, except as to sulphur the royalty shall be fifty cents (50¢) per ton for each ton mined and marketed. Any royalties due the State hereunder shall be deducted from grantor's royalties.

The Grantee shall have the free use of oil, gas and water from said tracts of land only out of wells or tanks made by him for all purposes of operation on said tracts of

land, and the royalty on oil, gas and other minerals, except sulphur, shall be in the net quantity saved after deducting any so used.

It shall be optional with the Grantee to drill or mine or carry on other operations on said tracts of land, or to refrain from doing so wholly or partially at any or all times, both before and after production; it being expressly agreed by the Grantor that the down cash payment recited in this instrument, receipt of which is hereby acknowledged, to Grantor is adequate to compensate and does compensate the Grantor for this right and privilege of Grantee.

It is further distinctly understood and agreed that no use of the surface of the above described tracts of land by anyone shall be construed as adverse to the rights of Grantee, his heirs and assigns, in and to the oil, gas and other minerals herein conveyed, as well as the right to mine and to produce the same.

No well shall be drilled nearer than 200 feet to any house or barn now on said land, unless by consent of the Grantor, and nothing herein contained shall deprive the Grantor of the full use and enjoyment of said land, subject to the privileges and estate hereby granted, and when requested by the Grantor the Grantee shall bury his pipe lines so that they will not interfere with cultivation.

Should the interest owned by the Grantor in said land prove to be less than the entire fee the royalties herein provided for shall be paid to the Grantor in the proportion only that the interest of the Grantor bears to the entire fee.

If the estate of either party hereto be assigned the covenants hereof shall extend to the assigns and successive assigns; but no change or division in the ownership of the Grantor, by purchase or otherwise, shall be binding on the Grantee for any purpose until the Grantee shall have been furnished with proper evidence thereof.

To Have and To Hold the above described oil, gas and other minerals, and the rights herein granted, all and singular, unto said grantee, his heirs and assigns forever;

and the Grantor hereby binds itself its successors and assigns, to warrant and forever defend the same unto said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

It is expressly understood and agreed that this instrument is to be construed as a conveyance in fee of all the oil, gas and other minerals in and under the above described tracts of land.

In Witness Whereof, the Grantor aforesaid has caused these presents to be signed by Robt. E. Goree, its Vice President, thereto duly authorized, and its common seal hereunto affixed; and in witness whereof, these presents are also signed by the Grantee herein this 23 day of May A.D. 1922.

An examination of the instrument itself convinces us that it violates the Relinquishment Act, and is null and void for many reasons. The Relinquishment Act contemplates an oil and gas lease, but not an absolute fee simple sale. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265; Norman v. Giles, 148 Tex. 21, 219 S.W.2d 678; Lewis v. Oates, 145 Tex. 77, 195 S.W.2d 123; Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769; Hinson v. State, Tex.Civ.App., 245 S.W.2d 755; State v. Magnolia Petroleum Co., Tex.Civ.App., 173 S.W.2d 186; McDonald v. Dees, Tex.Civ.App., 15 S.W.2d 1075.

(1) The parties by the instrument expressly declared to us what they were conveying, and they did so when their intentions were clearest and their memories freshest. We need look no further than those written declarations, for they say without equivocation: "It is expressly understood and agreed that this instrument is to be construed as a conveyance in fee of all the oil, gas and other minerals in and under the above described tracts of land." Since the decision in Greene v. Robison in 1928, The Texas Company has endeavored to convince itself and now this Court, that the deed did not mean what

it said at all. If, as The Texas Company urges, it did not intend to convey a fee in all the oil, gas and other minerals, we are rather at a loss to understand why they chose such strong language to say they did. Subsequent events do not erase those words from the deed.

(2) The instrument was a deed, absolute in form. It meets all the requirements for a deed absolute, as set forth in Article 1292, Vernon's Ann.Civ.Stats. Its granting clause states that it "grants, bargains, sells and conveys." Its habendum clause is, "To Have and To Hold * * * forever." Its warranty clause is, "to warrant and *forever* defend." Ralph v. Magnolia Petroleum Company, Tex.Civ.App., 95 S. W.2d 222. The consideration for the instrument was a cash and paid consideration, and looked to no delay rentals nor royalty flowing from production, for the instrument expressly stated that the "down cash payment * * * to Grantor is adequate to compensate and does compensate the Grantor for this right and privilege of Grantee." That clause excluded any claim that the consideration embraced future rents and a duty to produce.

(3) The deed on its face demonstrates that it was not intended as an oil and gas lease. A hurried examination of the instrument indicates that it possesses some clauses similar to those used in an oil and gas lease, but, on closer scrutiny, it becomes apparent that its provisions are in reality exclusions of and provisions against most of the subjects common to an oil and gas lease. There is no provision for a delay rental. State v. Magnolia Petroleum Co., Tex.Civ.App., 173 S.W.2d 186. During many years, The Texas Company did not even pay the statutory rental of ten cents an acre, which it now urges should be read into its deed. The statute expressly required it, but the deed did not. There is no provision for a primary term. State v. Magnolia Petroleum Co., Tex.Civ.App., 173 S.W.2d 186. There is no provision for a determinable fee, nor a limit upon the duration of the estate conveyed. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566;

Ralph v. Magnolia Petroleum Company, Tex.Civ.App., 95 S.W.2d 222. On the contrary, the conveyance is in fee forever. Appellant seeks to write in an obligation to drill off-set wells, as the factor which makes the deed a determinable fee. That argument begs the question, since The Texas Company owned nothing that would terminate for non-drilling. The royalty interest in the deed in question also is perpetually retained. The express, positive words of the instrument, as discussed in the first point above, together with these characteristics, all combine to show a negation of an oil and gas lease.

(4) The deed is a manifest exercise of agency power not granted by the Act. Art. 5367, Vernon's Ann.Civ.Stats. Any attempt on the part of the State's agent to convey minerals other than oil and gas is beyond the power of the agent and void. State v. Magnolia Petroleum Co., supra. Yet the surface owner disregarded that express limit of his power by conveying "all the oil, gas and other minerals (whether similar or dissimilar)" and specifically referred to sulphur.

(5) The instrument defeats the purpose of the Act. The opening words of the first section of the Relinquishment Act are: "To promote the active co-operation of the owner of the soil and to facilitate the development of its oil and gas resources the State hereby constitutes the owner of the soil, its agent for the purposes herein named, * * *." Greene v. Robison supra, and Lewis v. Oates, supra, have settled the point that the primary purpose of the Act was to obtain production and development of minerals. Norman v. Giles states [148 Tex. 21, 219 S.W.2d 684]: "One important object of the Act was to develop the state's minerals." But the instrument here under examination, instead of facilitating development, has an express clause that the grantee may or may not drill, in whole or in part, forever. Faced with this express provision, which vests the grantee with the power to substitute its judgment for that of the Legislature, The Texas Company argues that it may be better for the

State to hold its minerals in the ground than to facilitate their development. The merits of that debate we shall not pass upon, but shall leave it to some future Legislature to hear, consider and, if convinced, to repeal the declared purpose stated in the Relinquishment Act. As presently written and endorsed by the Supreme Court, the purpose of the Act is contrary to the purpose manifested in the deed and contended for by The Texas Company.

(6) The instrument excludes the usual implied covenants. The usual implied covenants can not exist beside the express paragraph against them, and the fact that the deed provides for a royalty of one-eighth does not aid the implication, because it further states "that the down cash payment * * * is adequate to compensate and does compensate the Grantor for this right and privilege of Grantee." That right and privilege referred to is the right and privilege not ever to develop, in whole or in part. The express provision against the declared purpose disclosed in the Act, forecloses any implications in the deed. Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 1041, 60 A.L.R. 890; Ralph v. Magnolia Petroleum Company, Tex.Civ.App., 95 S.W.2d 222.

. (7) The deed covered 12,000 acres of land that were privately owned by Duval and 4,000 acres of minerally classified lands. The same words in the same deed applied to all lands. The Texas Company's contention would lead to strange results. The same words would mean an absolute fee as to one part of the grant and a determinable fee as to the other; no rentals as to one part and rentals as to the other; no implied covenants as to one part and implied covenants as to the other; "oil, gas and minerals," as to one part, but only oil and gas as to the other. Appellant would construe the words so they would mean two different things.

■ The trial court's unattacked findings show that nothing exists outside the instruments which would show a lease was intended. Duval, in 1922, in its effort to effect some character of transaction with reference to the 16,000-acre tract, gave The Hahl Company an exclusive right either to "sell the oil and mineral rights" or to "sell five-year commercial leases" with a different consideration to The Hahl Company, depending upon which kind of trade they effected. The negotiations led not to a lease, but to the "sale of the oil and minerals." Though Duval's Board of Directors already had passed a resolution which authorized an oil and gas lease; the day before the 1922 instrument was executed Duval adopted a new resolution which authorized the sale of minerals by mineral deed, or an absolute fee conveyance. Other documentary evidence discloses that The Texas Company knew all that Breeding knew, and that he was buying on The Texas Company's behalf. There is ample support for the trial court's finding "that Duval County Ranch Company, R. E. Breeding, and The Texas Company, at the time of the execution of such conveyances, considered and intended them to be absolute conveyances in fee simple."

■ The Texas Company seeks to uphold the instrument as an authorized lease by reading the provisions of the Relinquishment Act into the deed. There are many reasons why this can not be done. Chief among them is that there is a mountain of authority standing in the way of such an escape. Danciger Oil and Refining Company v. Powell, 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; Empire Gas & Fuel Co. v. State, supra; Lemar v. Garner, supra; Lewis v. Oates, supra; McDonald v. Dees, supra; State v. Magnolia Petroleum Co., supra; Ralph v. Magnolia Petroleum Company, Tex.Civ.App., 95 S.W.2d 222; Hinson v. State, Tex.Civ. App., 245 S.W.2d 755. The arguments now made by The Texas Company were made, but rejected by this Court, in State v. Magnolia Petroleum Co., which case was later cited with approval in the Supreme Court's opinion in Lewis v. Oates. The language, not the holding, in Permian

Oil Company v. State, 161 S.W.2d 568, is the only variance from this unbroken line of decisions holding such deeds completely void, and that case by the Third Court of Civil Appeals, if it is a holding of anything beyond the venue question there at issue, was not later followed by that Court in Hinson v. State, 245 S.W.2d 755, 756, on the points here concerned. Contrary to The Texas Company's position, and contrary to the language in its former venue opinion, in the Hinson case the Court stated:

> "John R. Reeves, the surface owner, had no authority to convey any mineral interest to C. W. Hinson, the Relinquishment Act merely constitutes the surface owner the agent of the State, with authority to execute oil and gas leases on the land. * * * Since Hinson had no interest in the * * * minerals, the signing of the lease * * * was * * * without legal effect."

Let us observe the clash between the deed and the Act. The deed is in the form of an absolute conveyance; the Act authorizes an oil and gas lease. The deed conveys all minerals; the Act authorizes a lease only of oil and gas; the deed recites that it is executed by the surface owner "as agent and representative of the State;" yet it is in excess of and in disregard of the Act's grant of power. The deed provides against any duty of development, the Act states that it is to facilitate development. The deed contracts against implied covenants; the Act contemplates an oil and gas lease with implied covenants. Danciger Oil and Refining Company v. Powell, 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408. The deed provides for an indefeasible fee; the Act has been held to authorize only an oil and gas lease which contemplates a determinable fee. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. If we should imply a time for termination, without the surface owner and the lessee agreeing, we have no suggestion as to what period of time we should write into the lease. The deed provides for no delay nor statutory rentals, and grants the right never to drill; the Act contemplates delay rentals and requires a minimum rental of ten cents per acre per annum. As Mr. Justice Murray stated in State v. Magnolia Petroleum Co. [173 S.W.2d 190]: "If we write a rental into the deed, what price shall we put thereon? This is a matter upon which the parties have not agreed. The State wants more than ten cents per acre if it can get it, while the appellee certainly doesn't want to pay more than ten cents if it can be avoided. * * * This court cannot make an agreement for the parties. There has been no meeting of the minds upon this point. This presents a matter which is not met by merely writing the Relinquishment Act into the deed." And, finally, the deed states that it was "expressly understood and agreed that this instrument is to be construed as a conveyance in fee of all the oil, gas and other minerals * * *"; whereas the contention is here made that by reading the Act into the deed a contrary result may be obtained. To read the Act into the deed would do violence to the instrument as written and intended, and would be destructive of its express provisions. The deed and the Act are so opposite in their declared purposes that they can not be reconciled nor construed together. The Texas Company's argument on this point amounts to nothing more than an expression of its present willingness to forego clauses it demanded in 1922, if that is what is necessary to validate an instrument and get out of "the middle of a bad fix," as one if its early letters expressed its plight. Appellant, in its brief, states that prior to the entry upon the lands, "appellant could easily have obtained a ten-year paid-up lease from Duval." At that time it states that neither the State nor Duval questioned the validity of the instrument. Despite that apparent ease with which a correct lease could have been obtained at the time, none was obtained, no doubt, because they preferred the more advantageous instrument that had no primary term, rentals, implied obligations, nor possibility of reverter. Even at that late date they still desired just what they had, for otherwise

they could have obtained what they now urge the instrument really means.

■■ The Texas Company by way of defense urged that the State is estopped to deny the validity of the instrument. The trial court correctly ruled that the administration of the Public Free School Lands is a governmental function against which equitable estoppel does not apply. Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Saunders v. Hart, 57 Tex. 8, 9; Fannin County v. Riddle, 51 Tex. 360; Giles v. McKanna, Tex.Civ.App., 200 S.W. 2d 709; Humble Oil & Refining Co. v. State, Tex.Civ.App., 162 S.W.2d 119; Note 1, A.L.R.2d 344. But, in any event, the facts prove that no estoppel existed. Long before any entry to drill was made The Texas Company debated whether it had a mineral deed rather than a lease. It knew that "No rights pass to any one *until a sale or lease* is effected according to the terms of the act." Greene v. Robison, supra [117 Tex. 516, 8 S.W.2d 658]. The Texas Company, in dealings with Duval, acknowledged its defective title. With full knowledge of the condition of its title, The Texas Company placed reliance upon the Enlargement Act of 1931, Senate Bill 310, Acts of 42d Leg., 1931, ch. 23, p. 28, to rectify its title, but that Act was declared unconstitutional. Empire Gas & Fuel Co. v. State, supra. Over a period of eleven years prior to actual entry, the State made no representations, did nothing, and concealed nothing. During all that time The Texas Company entertained its own developed idea that its title was doubtful and did not rely upon any act or deed on the part of the officials of the State of Texas. The Texas Company did not rely upon the State of Texas in the course it followed. There was no estoppel in fact or in law.

For all these reasons, the trial court properly held that the State of Texas never parted with its title to all the oil and gas under the 4,000 acres of School Lands. But the court, instead of granting judgment for the full 16/16, actually granted judgment for 15/16. The trial court gave judgment that Duval should not be accountable for the value of the 1/16 of the oil it has received. And, in addition to the 1/16 of the oil produced in the past, it adjudged that Duval should also recover 1/16 in the future. The judgment stated that Duval had "the further right to receive from existing production pending the execution of such lease or leases, one-sixteenth (1/16) of the production of oil and gas from said land as compensation for damage to the soil." The findings of the trial court manifest its reasons for entitling Duval to 1/16 of the oil produced in the past, present and future. The findings stated that Duval "has suffered the damage contemplated under the Relinquishment Act. * * * That said oil and gas has been drained from beneath the property and cannot be replaced. That said Duval Ranch Company was powerless to correct the existing situation or oust the trespasser from its possession of the minerals and if called upon to respond for the one-sixteenth (1/16) paid it, it cannot receive it under any lease that it may execute and the State would receive one-sixteenth (1/16) of the production which the law contemplates shall be paid to the surface owners."

■ The Texas Company questions this part of the judgment by two points and we are of the opinion that they should be sustained. We do not know how we can hold that the deed is 15/16 void and 1/16 valid; how The Texas Company is a trespasser, yet Duval is the State's performing agent. The deed was not in conformity with the Relinquishment Act, but in violation of it, and Duval has joined with the State on this appeal to urge its own violation of authority and the deed's consequent invalidity. The deed is void as to all, not a fractional part of the subsurface, and the State's ownership of the full 16/16 of the sub-surface estate has never ceased. "No rights pass to any one until a sale or lease is effected according to the terms of the act." Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655, 658. So far as we know, the Relinquishment Act states the only means yet provided by which benefits in School Lands are bestowed upon anyone, and until one has invoked the provisions of that Act in the manner authorized, neither

the Land Commissioner, administratively, nor this Court, judicially, can create a new benefit.

The Legislature in 1931, after Greene v. Robison was decided, sought to create new rights for surface owners by means of the Enlargement Act, Senate Bill 310, Acts 42d Leg., 1931, ch. 23, p. 28, but Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265, 274, held, that "It is not the province of any department of the government to question the wisdom of any provision in the Constitution, and any act which runs contrary to the Constitution is void. * * * One of the paramount purposes contained in that instrument was to lay the foundation for the encouragement, endowment, and perpetuation of a permanent school fund. Such a fund was established. It plainly and definitely provided that such a fund should not be donated or impaired unless in accordance with the provisions of the Constitution." The judiciary is equally as powerless as is the legislative branch of the government in disposing of Constitutional Public School Lands.

The Act states:

"The payment of the ten cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be *in lieu of all damages to the soil.*" Vernon's Ann.Civ.St. art. 5379.

From that section we conclude that the ⅟₁₆ is not payable *as* nor *for* damages, but *in lieu* or *instead* of damages. It is in place of damages. The surface owner is entitled to ⅟₁₆ upon making a lease and performing as a lawful agent, but the quoted part of the Act means he shall not also be entitled to recover for surface damages in addition to the ⅟₁₆.

The above section states that it is the rental and the obligation to pay royalty, the payment and the acceptance of same by the owner that replaces damages. No obligation to pay rents and royalty ever arises except by a lease. Section Two of the Act, Vernon's Ann.Civ.St. art. 5368, authorizes the owner to make leases upon such terms and conditions as he deems best, subject to the provisions of the Act. Until that lease is executed there is no fixing of the obligations between the parties. It is the lease which invokes the Act on the surface-owner's behalf, which gives rise to the obligation, and that *obligation,* which is fixed in and arises by a lease, is *in lieu* of all damages. Hence, the lease determines what the land-owner shall receive, and that in turn is instead of, in place of, as a substitute for, in lieu of damages. The surface owner is in court barefooted without a lease, and the Act entitles him to nothing without one. Colquitt v. Gulf Production Co., Tex.Com.App., 52 S.W.2d 235, 238; Empire Gas & Fuel Co. v. State, supra; Lemar v. Garner, supra; Wintermann v. McDonald, 129 Tex. 275, 102 S.W.2d 167, 104 S.W.2d 4; McDonald v. Dees, Tex.Civ. App., 15 S.W.2d 1075.

It follows therefore that a surface owner in the absence of a lease may be entitled to damages, but he is not entitled to a ⅟₁₆ as damages under the Act which requires a lease and which takes the place of damages. The trial court erred in awarding damages to Duval equal to a ⅟₁₆ royalty and in vesting Duval with rights under some future lease not before us. The Texas Company, under the judgment and finding, is an innocent trespasser, and is entitled to offset against the State's claim, the reasonable costs of production, including the necessary and reasonable surface damages. It has not yet been determined what those surface damages were, but the trial court has applied a wrong measure of damages in allowing The Texas Company an offset of all the sums paid Duval, and in allowing Duval to recover a net ⅟₁₆ under the Act without regard to the actual damages. "It is the oil operator who injures or destroys the owner's land." Greene v. Robison, supra. The State did not damage Duval's surface, and to award the State's property to Duval in payment of damages for which it is not responsible and to award Duval ⅟₁₆

before performance under the Act, is to violate the public policy of the State declared in the Constitution and statutes.

■ These points were raised by The Texas Company, in its alternative position as an innocent trespasser claimant, and it has an interest in seeing that the innocent trespasser rule is applied correctly. The State did not raise the point. However, the error is·apparent on the face of the record and is disclosed by the judgment and findings. It concerns Public School Lands under the Constitution, and it "directly and adversely affects the interest of the public generally." This is fundamental error. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W. 2d·979; Murray v. Brisco, Tex.Civ.App., 209 S.W.2d 976; Texas & Pacific Coal Co. v. Lawson, 89 Tex. 394, 32 S.W. 871, 34 S.W. 919.

■ The trial court, in the exercise of its discretion, refused to allow the State of Texas interest prior to judgment, on the amount of the State's judgment, and in this the court erred. The Texas Company has wrongfully detained and had the use and benefit of these funds since December 31, 1937. The Texas Company knew its gross income, its total costs, and was allowed an offset in the maximum amount claimed by it. In like cases, where there were offsets allowed against claims, interest before judgment was allowed as a matter of law rather than as a matter of discretion. Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627; Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Kramer v. Wilson, Tex.Civ.App., 226 S.W.2d 675; Humble Oil & Refining Co. v. State, Tex.Civ.App., 162 S.W.2d 119; Gulf, C. & S. F. Ry. Co. v. Morrow, Tex.Civ.App., 66 S.W.2d 481; Galveston, H. & S. A. R. Co. v. Standard Rice Co., Tex.Civ.App., 34 S.W.2d 619; Settegast v. Timmins, Tex.Civ.App., 6 S.W. 2d 425; Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185; City of Texarkana v. Arkansas, Louisiana Gas. Co., 5 Cir., 118 F.2d 289. It follows·that the interest in the sum of $278,073.48, on $^{14}\!/_{16}$ of the value of the oil detained, must be added to the State's judgment.

The title to $^{16}\!/_{16}$ of the oil and gas is adjudged in the State of Texas, and the trial court's judgment is consequently affirmed wherein it adjudged $^{15}\!/_{16}$ of the oil and gas to the State, and is reversed and rendered wherein it adjudged $^{1}\!/_{16}$ of the oil and gas or its value to Duval.

The judgment is affirmed wherein it awarded damages to the State of Texas in the amount of $666,687.75. It is reversed and rendered so the State will recover interest on that sum in the amount of $278,073.48.

Duval was awarded surface· damages equal to $^{1}\!/_{16}$ of the value of the oil and gas produced but on a patently unconstitutional and wrong theory. The cause must be reversed and remanded to determine the extent of the actual surface damages done Duval by The Texas Company as an innocent trespasser, which amount will be allowed as an offset against the State's ownership of its other $^{1}\!/_{16}$ oil and gas.

However, Duval's utmost prayer for damages was for· a sum·equal to $^{1}\!/_{16}$ of the value of the oil. We are of the opinion that Duval should be afforded an opportunity to try its issue of actual damages to the surface without holding up the other issues in the case, particularly since to hold up the other phases of the judgment while the cause is heard on remand, would be to charge the parties unnecessarily with six per cent interest on the amount of the judgment.

■ Since the title issue is entirely determined by this suit, and since all damage issues are also determined, with the exception of the surface damages and its consequent offset against the State's rights to $^{1}\!/_{16}$ of the value of the oil produced, the cause is divisible and hence is severed and remanded to ascertain the damages to the State from its other $^{1}\!/_{16}$, after allowing offsets for surface damages. Rule 434, Texas Rules of Civil Procedure; Stewart v. Basey, Tex.Civ.App., 241 S.W.2d 353, 360, affirmed, 150 Tex. 666, 245 S.W.2d 484; Boone v. Hulsey, 71 Tex. 176, 9 S.W. 531, 536; Simmons y. Wilson, Tex.Civ.App., 216 S.W.2d 847; Donada v. Power, Tex.Civ.App., 186

S.W. 871; Diffie v. White, Tex.Civ.App., 184 S.W. 1065; 3-B Tex.Jur., Appeal and Error, § 1035.

The judgment is affirmed in part, reversed and rendered in part, and reversed and remanded in part.

W. O. MURRAY, Chief Justice (dissenting).

I do not concur in that part of the opinion of the majority wherein they hold that Duval County Ranch Company, hereinafter referred to as Duval, should not be permitted to retain the 1/16 royalty paid to it by The Texas Company and should not be paid a 1/16 royalty of production from the land in dispute in the future. I think the judgment of the trial court was correct and should have been affirmed in this respect. (1) There was no properly assigned error as to this matter. (2) There likewise was no fundamental error, and (3) there was no reversible error assigned, fundamental or otherwise.

I will discuss these propositions in the order set out above. It is true The Texas Company, by its "Eight and Ninth Points", attempted to raise the contention that Duval should not be permitted to retain the 1/16 royalty paid to it by The Texas Company. In making this assignment The Texas Company does not discharge the burden placed upon it by Rule 434, T. R. C. P., of showing that it has probably been prejudiced by the alleged error. Thompson v. Janes, Tex.Civ.App., 245 S.W.2d 718, affirmed, Tex.Sup., 251 S.W.2d 953; Benson v. Weaver, Tex.Civ.App., 250 S.W.2d 770; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191. The Texas Company was found to be an innocent trespasser upon the land and entitled to receive credit for the money it had been out in developing and producing oil from the 4,000 acres involved. It showed it had received a gross sum of $2,760,476.61 for the oil produced at an expense of $2,093,679.86, thus leaving a difference of $666,787.86, which was the principal amount of the judgment here entered by the trial court.

The State of Texas did not question this expense account but agreed to its correctness. Included in the expense account of The Texas Company was the sum of $162,225.95, paid by it to Duval as a 1/16 royalty upon the oil produced. Thus The Texas Company received full credit for this sum and is in no position to say that it should have received more. The Texas Company, being the trespasser who removed the oil, is primarily liable to the State for the value of the oil taken. If it be ultimately shown that The Texas Company paid a greater sum to Duval than it should have, it could be called upon to pay such excess to the State, so The Texas Company can only be injured by a retrial as to this sum and not be helped. It therefore has not shown prejudicial error.

This brings us to a consideration of fundamental error. The majority have held, in substance, that in spite of the fact that the State agreed to this item as a proper part of the cost of production of oil from the land and did not contest the right of Duval to keep the sum, nevertheless, it is fundamental error to allow Duval to keep the money without proving, by competent evidence, that the surface of the land was damaged to that extent. The State has made no such contention, and by not assigning this matter as error the State has waived any such alleged error. Rule 374, T.R.C.P. The State, when it voluntarily becomes a suitor in one of its courts, is governed by the same laws and the same rules of procedure and practice as any other suitor.

In Fristoe v. Blum, 92 Tex. 76, 45 S.W. 998, 999, Mr. Justice Brown, speaking for the Supreme Court, said:

"It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the

same law applies to it as under like conditions governs the contracts of an individual."

In Producers' Oil Co. v. State, Tex.Civ. App., 213 S.W. 349, 352, the Court said:

"A careful examination of the case in no way supports the contention that the state, in its litigation with its citizens, is intrenched in a more advantageous position in regard to applying the general rule in respect to the burden of proof; by the same rules of evidence and rules of procedure the state is found, just as any other citizen. It has no special immunities and privileges when litigating with the citizen."

In Arkansas State Highway Commission v. McNeil, 262 S.W.2d 129, 130, the Supreme Court of Arkansas said:

"Of course it is true that when the State voluntarily undertakes litigation and submits itself to the jurisdiction of the courts, it must be treated as other litigants and must be bound by the actions of its attorneys."

Prior to the adoption of Rule 374, T. R. C. P., when Art. 1837, Vernon's Ann.Civ. Stats., was in effect, this Court could consider unassigned error, or error which was apparent upon the face of the record, but since the adoption of Rule 374, supra, all error is waived unless assigned. There are rare exceptions to this rule, none of which exist in this case.

It would be a harsh rule indeed which would reverse the judgment of Duval, cast it in the cost of this appeal and force it to the expense of another trial, simply because the attorney for the State agreed to the item rather than requiring proof thereof, and concerning which judgment the State even at this time is in no way complaining.

Lastly, the grounds for reversal by the majority do not show reversible error of

any kind assigned, fundamental or otherwise.

The Legislature of this State, by the enactment of the Relinquishment Act, Acts 36th Leg., 2d C.S.1919, Ch. 81, pp. 249–254, Arts. 5367–5382, Vernon's Ann.Civ.Stats., declared as the public policy of this State that, as a matter of right and justice, the surface owner of minerally classified lands was entitled to a 1/16 of the value of all oil and gas produced from such lands. It was upon this theory that the Act was upheld by the Supreme Court in Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655. The attorney for the State, in agreeing that Duval was entitled to retain the 1/16 royalty paid to it by The Texas Company, was only following the public policy of this State as declared by the Legislature.

There is another reason why the State is not entitled to deny to Duval the right to retain this 1/16 royalty. The State was entitled to recover from the innocent trespasser the value of the oil and gas taken from the land, less the cost of development and production. The State has a judgment for this amount and it is entitled to no more. It has agreed with The Texas Company that the 1/16 royalty paid by it to Duval was a proper expense and gave The Texas Company full credit for this item. The State cannot turn around in the same case and contend that it was an improper item and recover the amount from Duval. The State is entitled to but one satisfaction of its claim against The Texas Company. When it allowed this payment by The Texas Company to Duval as a proper expense of production, its claim against The Texas Company was satisfied to that extent, and it cannot then demand another satisfaction of the same item from Duval.

For the above reasons, I respectfully enter my dissent from that part of the majority opinion which reverses the judgment of the trial court as to Duval.